No. 21337.

THE STATE OF COLORADO *v.* GODFREY C. FRANC AND MARY E. FRANC.

(437 P.2d 48)

Decided February 5, 1968.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, CLIFTON A. FLOWERS, Assistant, for plaintiff in error.

MARTIN P. MILLER, MARJORIE WORLAND McLEAN, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

GODFREY C. FRANC and Mary E. Franc, referred to herein as plaintiffs, filed their complaint in the trial court in which they named the State of Colorado and thirty-three individuals as defendants. The prayer of the complaint sought a decree quieting title in plaintiffs to certain tracts of land in Section 16, Township 5 South, Range 67 W in Arapahoe county, including a parcel containing 11.2 acres which is the subject of this controversy.

Plaintiffs in their complaint recognized that the state might "claim some reversionary interest in part of the property herein," but alleged that neither the state nor the other defendants had any valid claim or interest; that plaintiffs were the owners in fee simple of all the property; and prayed for a decree enjoining the defendants from asserting any interest and adjudging plaintiffs to be the owners in fee simple of all the described land, and entitled to possession.

None of the defendants appeared within the prescribed time to plead, except Clyde Pomponio as Administrator of the Estate of Virginia B. Braswell Pomponio, deceased, who filed an answer containing three counterclaims. Default judgment was entered against all other defendants on September 7, 1961.

Although, as subsequently appeared, the State Board of Land Commissioners as co-grantor with the Governor of the parcel in controversy, was a proper party to the action, it was not named as a defendant — only the state alone; and plaintiffs had served the summons on July 26, 1961, upon Eleanor Giacomozia, the secretary to the Attorney General, at the State Capitol.

On October 19, 1962, the State of Colorado filed a motion to vacate the default entered against it, tendering an answer and counterclaim in which it was alleged that the tract here in controversy was owned by the state by reason of a provision in the deed executed by the State Board of Land Commissioners which created a possibility of reverter. The contention of the State of Colorado is

that the language of this deed — through which plaintiffs claim — discloses a clear intent of the land board (grantor) to create an estate to last for an indefinite time, measured in terms of use, and to have that estate end automatically when the land is no longer used for the prescribed purpose. Copies of a deed and two patents were attached to the motion to vacate and upon these conveyances the state based its claim to ownership of the tract. The deed above mentioned was a right-of-way deed for a reservoir in which the registrar of the Board of Land Commissioners and the Governor had sold for a price of $10 an acre to the Denver Sugar Land and Irrigation Company, its successors and assigns, in fee simple, the 11.2 acres here in dispute. The deed was dated January 20, 1904. It contained, *inter alia*, the following:

"It is especially agreed and understood that the land hereby conveyed shall revert to the State of Colorado if at any time it shall be used for other than reservoir purposes, or should the said reservoir be abandoned and discontinued, or if the said reservoir shall not be constructed and in operation within one year from the date hereof."

The state alleged in its tendered answer that the reservoir either was never constructed, or if it had been created it had long since been abandoned, and that thereby all the estate of the original grantees and their successors in interest terminated automatically, and the State Board of Land Commissioners became vested with all title held by it prior to execution of the deed which contained the possibility of reverter. The two patents above mentioned conveyed fee title to the grantees named therein of larger tracts of land in Section 16, in which the reservoir site was located and completely surrounded it. Each patent excluded that portion of the 11.2 acres which intruded into the tract conveyed by patent. The patents were dated June 16, 1910, and August 18, 1922, respectively.

The trial court granted the motion to set aside the default entered against the state and permitted the answer and counterclaim to be filed. Plaintiffs filed an answer to the counterclaim setting forth a number of legal and equitable defenses. Whether they can successfully be asserted against the state need not be determined in view of our disposition of the writ of error.

Trial was to the court on May 2, 1964. The plaintiffs stood upon the evidence heard by the court at the time of the hearing which resulted in the quiet title decree. Although invited by the court to present evidence in support of its counterclaim, the state moved for judgment on the grounds that plaintiffs had presented no evidence and had failed to establish a prima facie case; and that vacating the default had eliminated the quiet title decree in toto as far as the state was concerned. The motion was denied, the court stating that the record of that hearing was before it and available to the state, and that a prima facie case was made. A member of the Board of Land Commissioners was then called by the state. He testified that he was in control of the records of the board, and that no patent had ever been issued conveying the 11.2 acres in dispute. The Attorney General asked that the court take judicial notice of the enabling Act under which the State of Colorado acquired title to all "Section 16" lands in the state, and that such lands were school lands. No further evidence was offered.

Upon this state of the record the court entered its Findings, Conclusions and Judgment, pertinent parts of which were that the state had failed to prove any of the matters alleged as a defense or counterclaim; that the state had conveyed the tract in dispute by right-of-way deed for a reservoir and that the condition included therein was a "condition subsequent," giving rise to a right of re-entry for condition broken, and no re-entry was shown; that plaintiffs and their predecessors in interest had been in possession for more than twenty

years and had paid taxes both to the county and state for more than seven years under color of title; that the plaintiffs in equity and good conscience were entitled to a decree quieting title to the tract of land. Such a decree was entered. The state is here on writ of error seeking reversal.

■ The state first contends that the court erred in not granting its motion for judgment when plaintiffs elected to stand on the record theretofore made. Under the unusual circumstances of this case we hold that no error was committed in this connection.

In disposing of the issues between the plaintiffs and Pomponio as administrator, the court had heard evidence first as to the state of the title, and second as to the merits of the Pomponio counterclaim, both of which were necessary to judgment in that case. Months later when upon the state's motion the default was set aside the court was not obligated to treat as nonexistent the evidence as to plaintiffs' title because it had already entered judgment on the "strength" of the plaintiffs' title on the basis of that evidence.

■■ At the hearing on the state's counterclaim the court gave it every opportunity to present evidence, but this its counsel, for some reason unknown to us, did not do. It would have been a useless ceremony to require plaintiffs again to present in evidence their abstracts of title and attorney's opinion, both of which were available to the state. Board discretion in this area of the quantum of proof was vested in the court, particularly in this case where 32 other defendants had been served and failed to appear. The court could not wholly disregard its findings and decree upon which the rights of others had already been adjudicated, and it was entitled to take judicial notice of them. The purpose of re-opening the case for the state was to give it an opportunity to go forward with its evidence upon its affirmative defenses and counterclaim, and this it failed to do.

In the cases from other states, cited by the state, the judgments were for good cause vacated and thereby nullified, but in this case only the judgment of default against the state was vacated. In the case at bar the quiet title decree as to the other defendants remained in force so the court had before it the same case and the same evidence of plaintiffs' title.

■ It is argued that since no patent had issued by the state to the reservoir site, the state had not parted with title and no evidence was offered to rebut the prima facie case supporting title in the state since the right-of-way deed carried with it a "reverter" to the state for noncompliance on nonuse of the premises for reservoir purposes. Upon this point the trial court found that the right-of-way deed conveyed title to the grantees subject to a "condition subsequent" with a right of re-entry for condition broken. In such a case right of re-entry may be barred by the statute of limitations.

■■ We do not, however, agree that the right-of-way deed created a "condition subsequent" as found by the trial court. But when the trial court enters a correct judgment for the wrong reason we will nevertheless affirm it. *Metropolitan Industrial Bank v. Great Western Products Corp.*, 158 Colo. 198, 405 P.2d 944.

■ There has been some confusion in attempts of courts to distinguish between a "possibility of reverter" and a "condition subsequent." In this jurisdiction, however, no such confusion exists. In *School District No. Six, Weld County v. Russell, et al.*, 156 Colo. 75, 396 P.2d 929, the distinguishing features of the two interests in land were clarified. Under the test in *Russell, supra,* the right-of-way deed contained language which created a possibility of reverter. Upon termination of the use, the estate of the grantees and those claiming through them would ordinarily be terminated. However, the erroneous conclusion reached by the trial court on this point cannot benefit the state in this action for the reason that in this case, unlike the above cited case,

the right of the Land Board to reacquire the property was *subject to statutory conditions* which were not complied with by the state. Thus the plaintiffs, who have established prima facie color of title by successive grants which are free of condition, who have been in possession adverse to the state for over twenty years and who have been in possession and paid taxes under color of title for over seven years, were entitled to a decree against the state.

 We will not lengthen this opinion with quotations from the statute requiring specific action on the part of the State Board of Land Commissioners to implement a "reverter" to the state, of lands sold or granted by the board for purposes of a reservoir as in this case. By C.R.S. 1963, 112-3-34 and 37, the legislature imposed upon the Land Board two conditions which must be complied with before "any lands sold under the provisions of this article are reverted to the state for any cause whatsoever, * * *" to wit: (a) to give notice *at once* to the County Treasurer to rebate all taxes; and (b) to require *prior* notice by mail to its immediate grantee. These prerequisites are applicable to the case as shown by the record before us. We hold this was intended by this legislation to prevent what has happened in this case, namely, the payment of taxes upon land by successors and assigns, mediate or immediate, of the grantee, who had acquired fee simple title to the parcel, and to notify the grantee itself in order to forestall conveyance by the grantee to others. Not only was there no evidence presented to the trial court by the state or by the member of the Board of Land Commissioners who testified that the reservoir had not been constructed or had been abandoned, but it also appears that a reservoir was in existence after the effective date of the statute. No showing was made to the effect that the board had complied with either of the statutory requirements hereinabove mentioned. The contrary was admitted in argument.

 Under all the circumstances shown by the record in this case it would be harsh and unequitable, and contrary to due process, to set aside the decree entered by the trial court. The decree quieting title in the plaintiffs to the reservoir site, and the judgment reaffirming it, are therefore affirmed.

A petition for rehearing was granted in this case, new briefs were filed, and oral argument was had. The above opinion reaches the same result as that arrived at in the original decision. Since no substantive changes are involved, petition for rehearing directed to this opinion is dispensed with, and remittitur shall issue forthwith.

MR. JUSTICE KELLEY concurs in the result.

MR. JUSTICE McWILLIAMS dissents.