488 P.2d 83 (1971)
COLORADO CIVIL RIGHTS COMMISSION et al., Plaintiffs in Error,
v.
STATE of Colorado, By and Through SCHOOL DISTRICT NO. 1, BENT COUNTY et al., Defendants in Error.
No. 71-055, (Supreme Court No. 24510.)
Colorado Court of Appeals, Division I.
August 10, 1971.
*84 Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., James E. Dotson, Asst. Atty. Gen., Denver, for plaintiffs in error.
Fred E. Sisk, Las Animas, Holme Roberts & Owen, Richard L. Schrepferman, Denver, for defendants in error.
Selected for Official Publication.
PIERCE, Judge.
This case was transferred from the Supreme Court pursuant to statute.
This is an action to review a district court judgment reversing an order of the Colorado Civil Rights Commission in a proceeding arising under the Colorado Anti-Discrimination Act of 1957, C.R.S. 1963, 80-21-1 et seq. Plaintiffs in error, Colorado Civil Rights Commission and its members, were respondents in the district court and will be collectively referred to as the "Commission." Mrs. Margarita R. Gallegos was also a party respondent in the district court and will be referred to as "complainant" or by name. Defendants in error, School District No. RE-1, Bent County ("the Board"), Stephen J. Shuster and Leonard (Lenard) Smith, were petitioners in the district court and will be referred to by name or as "petitioners."
A complaint was filed with the Commission by Mrs. Gallegos against petitioners alleging that she was discharged from her employment as a teacher because of her Spanish-American ancestry in violation of C.R.S.1963, 80-21-6(1), (2), and (6). The matter was heard in its entirety before a hearing examiner who entered his findings of fact, conclusions, and recommended order that the complaint be dismissed. Thereafter, by majority vote, the Commission declined to follow the hearing examiner's recommendation. Upon the testimony adduced before the hearing examiner, the Commission entered its findings of fact, conclusions of law, and order that the allegations in the complaint were sustained by the evidence and that Mrs. Gallegos was, in fact, discriminated against in her employment by petitioners due to her national origin or ancestry.
Petitioners thereafter sought review in the district court, pursuant to C.R.S.1963, 80-21-8, alleging: first, that the Commission was without jurisdiction over the subject matter; and second, that its finding of unlawful discrimination was not supported by substantial evidence.
The record indicates that Mrs. Gallegos was employed by the school district as an elementary teacher from 1966 until 1968. Being on a probationary status, her employment was subject to 1967 Perm.Supp., C.R. S.1963, XXX-XX-XX, which provides:
"A teacher employed by a school district on a full-time basis who has not acquired tenure shall be deemed to be re-employed for the succeeding academic year at the salary which he would be entitled to receive under the general salary schedule unless the board thereof shall cause written notice to the contrary to be given to said teacher on or before the fifteenth day of April of the academic year during which said teacher is employed. Said teacher shall be presumed to have accepted such employment for the succeeding academic year unless he shall cause written notice to the contrary to be given to said board on or before said fifteenth day of April."
On or about January 23, 1968, Mrs. Gallegos was interviewed by petitioner Lenard Smith, the principal of the school to which she was assigned. He advised her that he *85 would not recommend her for employment during the next year and suggested that she resign. Past practice had been for the superintendent to concur in the principal's recommendations and for the school board to act affirmatively upon the recommendations of the superintendent. Evidence indicates that Mr. Smith did not condition a favorable recommendation for the complainant's future employment elsewhere upon her tendering a resignation.
The complainant tendered her resignation on February 6, 1968, and it was accepted by the Board on February 19, 1968. On February 23rd of the same year she requested that her resignation be withdrawn. This request was denied by the Board on March 4th. Approximately three weeks later the complainant filed her complaint with the Commission alleging discrimination.
Upon review of the Commission's order, the district court found that the complainant voluntarily "resigned" from her employment and that she had not shown that she was "discharged," which is a prerequisite to the Commission's jurisdiction under the provisions of C.R.S.1963, 80-21-6. At the close of complainant's case, the court held that jurisdiction had been lost by the Commission at the time of her resignation and judgment was rendered in favor of petitioners. No findings were made by the district court on the issue of discrimination.
The Commission filed a motion for new trial, alleging that the judgment entered by the court was contrary to the law and the evidence. The trial court denied the motion, stating that the general assignments of error "do not point out to the trial court with any degree of specificity the errors relied upon * * *", citing R.C.P.Colo. 59(f) as authority for its denial.

I.
Petitioners contend that the Commission's motion for new trial did not comply with R.C.P.Colo. 59(f) and this writ of error should be dismissed on grounds that the motion alleged general assignments of error without specifically noting the errors relied upon. We disagree with this contention.
In reviewing the Commission's decision, a district court performs the same function as an appellate court. As such, the district court is not the finder of fact. The findings of fact by the Commission are conclusive upon the district court if supported by substantial evidence. C.R.S. 1963, 80-21-8(6).
Since the scope of judicial review by the district court of the Colorado Civil Rights Commission's decision does not involve any finding of fact, it was unnecessary for plaintiffs in error to move for a new trial and any errors in such a motion are inconsequential. A motion for new trial is not required where judgment is entered after any hearing not involving controverted issues of fact. R.C.P.Colo. 59(h). Brooks v. Zabka, 168 Colo. 265, 450 P.2d 653. See People v. Maxwell, 162 Colo. 495, 427 P.2d 310.

II.
The Commission contends that the district court erred in determining that its jurisdiction was lost due to complainant's failure to prove that she was discharged from her employment with the school district.
In its findings of fact, the Commission found:
"* * * on the record as a whole, that the Complainant, Margarita Gallegos, was, in fact, denied employment in the position of a school teacher for the Respondent School District. While we do not find that there was duress or coercion in having her sign her letter of resignation, it was nonetheless, a practice for all persons who terminated their employment with the district, whether by resignation or by discharge, to be required to execute a letter of resignation. This practice was followed in the case of the Complainant, but regardless of the practice, the effect was the same, she was told she would no longer be employed in *86 that school system. Whether it is termed a discharge or refusal to hire, in either context she was denied employment which is a violation of the law if it was because of her national origin or ancestry."
The Commission's findings are conclusive upon the trial court if they are supported by substantial evidence. C.R.S.1963, 80-21-8(6). The record in this case adequately supports the Commission's jurisdiction based upon a constructive discharge of Mrs. Gallegos from her employment. The fact that Mrs. Gallegos submitted her resignation subsequent to her conference with Mr. Smith, at which time he had told her that he would not recommend her for rehiring, does not make her separation from employment by the school district a "voluntary" resignation. There is testimony that the principal's recommendations to the school board in regard to proposed discharges were followed by them in the majority of cases. There is further evidence that Mrs. Gallegos would not have resigned her position if Mr. Smith had not stated that he would not give her a recommendation for rehiring.
The concept of "constructive discharge" was developed in unfair labor practice cases and we feel that concept is applicable here. The fact of discharge does not depend upon the use of formal words of firing. The test is whether sufficient words or actions by the employer "would logically lead a prudent person to believe his tenure had been terminated." NLRB v. Trumbull Asphalt Company, 8 Cir., 327 F.2d 841; Putnam v. Lower, 9 Cir., 236 F.2d 561. We believe this test was met here and hold that the district court erred in finding that the Colorado Civil Rights Commission did not have jurisdiction in this action. A mere signed statement that a resignation is voluntary, such as the letter of resignation in this case, does not relieve an employer of the consequences of an act amounting to constructive discharge. NLRB v. East Texas Motor Freight Lines, 5 Cir., 140 F.2d 404.

III.
Although the district court did not reach the issue of whether the record supports the Commission's finding that Mrs. Gallegos had been discharged in violation of the Colorado Anti-Discrimination Act of 1957, it would serve no useful purpose to remand this case to the district court. Civil Service Commission v. Doyle, Colo., 483 P.2d 380. See Colorado Anti-Discrimination Comm. v. Continental Airlines, Inc., 143 Colo. 590, 355 P.2d 83 (concurring opinion of Justice Doyle). The proceedings herein are in the nature of judicial review and require no finding of fact. Therefore, in the interest of substantial justice and expediency, this Court will address itself to the sufficiency of the evidence upon which the Commission based its order. The parties have submitted additional briefs on this issue.
In determining whether the Commission's order should stand, the question is not whether this Court would come to an identical conclusion upon the evidence certified to it. A court cannot, upon the record of the proceedings before the hearing tribunal, substitute its own discretion for that reposed by statute in that tribunal. Due consideration must be accorded the presumption that an administrative body has acted fairly with proper motives, upon valid reasons and not arbitrarily. Draper v. Clark Dairy, Inc., 17 Conn.Supp. 93 (Cty. Sup.Ct.). Judicial review of findings made by an administrative body such as the Civil Rights Commission is limited to the question of whether, based upon the entire record, the findings are supported by evidence so substantial that an inference of the existence of a fact may be reasonably drawn. Holland v. Edwards, 307 N.Y. 38, 119 N.E. 2d 581. Under C.R.S.1963, 80-21-8, "the findings of the commission as to the facts shall be conclusive if supported by substantial evidence."
In applying the substantial evidence rule, courts have consistently held that such a commission has the right to sift evidence, accept the true evidence, reject the false, and base inferences on what it has accepted *87 as true. Kindt v. State Commission for Human Rights, 44 Misc.2d 896, 254 N.Y.S. 2d 933. See 4 K. Davis Administrative Law § 29.02; Stason, "Substantial Evidence" in Administrative Law, 89 U.Penn.L.Rev. 1026. In Draper v. Clark Dairy, Inc., supra, the court, in evaluating a statute similar to the one in question here, stated:
"The responsibility which the statute places upon the commission and its agencies, including the hearing tribunal, is a heavy one, involving, as it does, probing the inner recesses of the human mind to determine a real, if undisclosed, intent behind a given act. The determination of intent is seldom easy, but it must in proceedings under the statutes, nevertheless be the chief task to be accomplished. The statutes do not make the task any easier by placing the commission in the dual position of advocate and judge and at the same time demanding that equal justice for all which is its obvious aim."
This Court recognizes the fact that in cases such as this direct evidence going to overt discrimination is not a prerequisite to a finding of a discrimination under the terms of the Act. In Wurman v. City Commission on Human Rights, 53 Misc.2d 979, 281 N.Y.S.2d 198, it was stated:
"Such discrimination is generally subtle and covert, and direct evidence of discrimination can otherwise rarely be presented. A finding of discrimination can usually only be based upon deduction from a series or pattern of seemingly innocent acts taken together and viewed as a totality."
With these principles in mind, careful consideration has been given to the entire record in this case, and we are unable to find any evidence upon which the Civil Rights Commission could have supported its finding that a discriminatory or unfair employment practice was engaged in by the school district. The record discloses neither direct evidence of racial discrimination nor evidence of actions by petitioners or existing conditions from which a fair inference of such discrimination could legitimately be drawn.
It is the Commission's contention, however, that in light of its finding that the discharge of Mrs. Gallegos was not based upon her inadequacies as a teacher and in the absence of any other legitimate explanation for such discharge, the Commission was entitled to infer that the motivation for the discharge was racial discrimination. The Commission relies principally on a labor relations case dealing with unlawful discharge for union activity in which it was said:
"If he [the trier of fact] finds that the stated motive for a discharge is false, he certainly can infer that there is another motive. More than that, he can infer that the motive is one that the employer desires to concealan unlawful motiveat least where, as in this case, the surrounding facts tend to reinforce that inference." Shattuck Denn Mining Corp. v. NLRB, 9 Cir., 362 F.2d 466.
In that case the employer's stated reason for the discharge was found to be a mere pretext, and the inference of an illegal discharge was supported by surrounding facts and circumstantial evidence providing a logical basis for its application. In the case at hand, however, we have an antithetical situation: Not only did the school board put on substantial evidence of a legitimate basis for the termination of Mrs. Gallegos' employment, but no circumstantial evidence tending to substantiate an inference of discrimination by Mr. Smith or by the Board was presented. Racial discrimination may not be inferred as a basis for discharge where surrounding facts supporting such an inference are absent. Even though the Commission chose to disbelieve or disregard material evidence indicating that a proper basis for discharge did exist, the necessary inference of discrimination is not in evidence in the record before us.
Although based upon grounds of which we disapprove, judgment in favor of petitioners was the proper final result in this action and said judgment is affirmed. *88 State v. Franc, 165 Colo. 69, 437 P.2d 48, cert. denied, 392 U.S. 928, 88 S.Ct. 2284, 20 L.Ed.2d 1385.
COYTE and DWYER, JJ., concur.