Richard C. REUSSOW, Plaintiff,

v.

B. J. EDDINGTON, Individually, and as Chief of Police of the Greeley, Colorado Police Department; and The City of Greeley, Colorado, Defendants.

Civ. A. No. 79–K–600.

United States District Court,
D. Colorado.

Jan. 29, 1980.

Jerry C. Daniel, Houtchens, Houtchens & Daniel, Greeley, Colo., for plaintiff.

Gregory A. Eurich, Jerome C. Ramsey, Holland & Hart, Denver, Colo., James R. Craig, Greeley, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The above-entitled action is a civil rights suit under 42 U.S.C. § 1983 by a former municipal employee who claims that he was unlawfully terminated from his job. Defendants are the chief of police of the Greeley Police Department, and the City of Greeley, Colorado. Jurisdiction is provided by 28 U.S.C. § 1343(3). The action is before the court on defendants' motion to dismiss.

The allegations are that in June 1975, Richard C. Reussow became a member of the Greeley Police Department. After two and one-half months of training, he assumed the position of patrolman. He then completed a twelve month probationary period and became a permanent employee of the department. In January 1976, he joined the policemen's union and thereafter became involved in negotiations with the city concerning a pay raise for the policemen. In 1977, the policemen's union demanded a higher raise than the city offered and in October met to discuss the idea of circulating information criticizing the stand of the city manager and the city council on the pay raise issue. Shortly thereafter, the city circulated a memorandum through the police department which said that any city employee who became involved in the upcoming city election would be suspended or terminated from employment. Ruessow alleges that he contacted the American Civil Liberties Union, and was advised that the union was within its legal rights to proceed with the circulars. Between October 18 and October 28, 1977, he, along with other officers and their wives, distributed approximately 12,000 circulars. None of the officers were on duty or in uniform when the circulars were distributed. On October 29, Eddington ordered sergeants in the department to inform the officers that they were to desist from any political activity. Reussow alleges that he did not thereafter engage in any activity regarding the election.

After October 29, the city conducted an investigation of the officers' activities. A hearing resulted in Reussow being cleared of all charges except for violation of Section 9–14 of the Greeley Municipal Ordinances. This section states in relevant part that a city employee "shall not . . . take an active part in a . . . municipal campaign . . . or distribute pages or pamphlets, dodgers or handbills of any kind favoring or opposing any candidate for election, nomination or appointment to public office . . . ." The section also provides that "[a]ny willful violation . . . shall in itself be sufficient grounds to authorize the discharge of any such classified employee." Reussow received a thirty-day suspension that was later reduced to twenty days. He fulfilled the suspension period and returned to active duty. Shortly thereafter, he was called into Eddington's office, where he was advised

> that he could stay on with the Police Department if he wanted but that he would not be given the scheduled merit raise on his anniversary date, that he would not be considered for any additional schooling, that he would not be considered for any promotions regardless of eligibility, and that in general, his career with the Police Department had reached a permanent plateau.

(Complaint, at ¶ 9.) Reussow alleges that this compelled him to resign, and that he submitted his resignation on May 25, 1978.

Soon after the termination of his employment, Reussow alleges that Eddington, in his capacity as chief of police, contacted other area law enforcement agencies to which he had applied for employment and "advised them that if they wanted to continue having good relations with the Greeley Police Department they had better not hire Reussow." (Complaint, at ¶ 28.) Reussow says that except for these communications, he would have received employment. As it is, he has been unable to find employment in the law enforcement field in the area in which he lives.

Reussow complied with C.R.S., § 24–10–109 (1973) by sending a written letter of complaint to the mayor of the City of Greeley, and alleges that he received no response. Here, Reussow asserts three claims under Section 1983: (1) wrongful termina-

tion of his protected property interest in employment; (2) wrongful termination of his employment in retaliation against his exercise of a protected liberty interest in freedom of speech; and (3) defamation of character in retaliation against his exercise of a protected liberty interest in freedom of speech. He also asserts pendent state claims for breach of contract and for what is essentially a claim for tortious interference with employment opportunities. He seeks actual and punitive damages.

Defendants have moved to dismiss on three grounds: (1) that Reussow resigned and was therefore not wrongfully discharged; (2) that the city could constitutionally regulate the political activity of its employees; and (3) that defamation alone does not state a cause of action under Section 1983. Should these claims be dismissed, defendants request that the pendent state claims also be dismissed for lack of jurisdiction.

■ On a motion to dismiss, the allegations of fact must be viewed in the light most favorable to the plaintiff. A complaint should not be dismissed for failure to state a claim unless it clearly appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kennedy v. Meacham*, 540 F.2d 1057 (10th Cir. 1976); and *Tuggle v. Evans*, 457 F.Supp. 1015 (D.Colo.1978).

## I

■ It is fundamental that due process safeguards only apply when protected property or liberty interests are shown to exist.

*See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *McGhee v. Draper*, 564 F.2d 902 (10th Cir. 1977). Protected property interests are more than a unilateral expectation and have their basis in state law. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Hamm v. Scott*, 426 F.Supp. 950 (D.Colo. 1977). They arise where public employees hold contractual rights to continuing employment, *Abeyta v. Town of Taos*, 499 F.2d 323, 327 (10th Cir. 1974), or where state law creates a legitimate expectation of continued employment, as in implied agreements or administrative regulations. *DeBono v. Vizas*, 427 F.Supp. 905, 906 (D.Colo.1977).

■ Plaintiff bases his claim to a property interest on both contract and state law. Under the collective bargaining agreement between the union and the city, "[e]very new employee hired into the bargaining unit shall serve a probationary period of twelve (12) full months, after which he may be appointed a permanent employee and granted seniority the date of that permanent employment." (Collective Bargaining Agreement, at Art. VI.) Plaintiff alleges that he completed the probationary period and became a permanent employee. As a permanent employee, the collective bargaining agreement provided that he could not be "suspended, demoted, or discharged except for just cause . . . ." (Collective Bargaining Agreement, at Art. V.) In addition to these contract terms, the Greeley Municipal Ordinances at Section 9–12.1(a) list twenty-five reasons for the city manager's dismissal of a city employee,[1] and at

1. *Section 9–12.1. Dismissal.*
    (a) Reasons for dismissal. In the interest of good discipline, the city manager shall have the authority to dismiss an employee in the classified service for the following reasons:
    (1) Incompetency and inefficiency in performance of duty.
    (2) Wanton carelessness or negligence.
    (3) Deliberately damaging city property or wasting city supplies.
    (4) Bribery.
    (5) Dishonesty.

    (6) Brutality and offensiveness toward fellow employees and the public.
    (7) Permanent or chronic physical or mental ailments or defects impairing proper performance of duty.
    (8) Violation of any lawful or official regulation or order.
    (9) Insubordination.
    (10) Refusal to testify before a commission.
    (11) Being convicted of a criminal offense or a misdemeanor involving moral turpitude.
    (12) Conspiring to commit an unlawful act.

Sections 9–12.1(b) and (c) set forth the procedures that must be followed.[2] Taken together, the allegations are clear that plaintiff was a permanent employee subject to discharge only on account of specific reasons and only according to certain procedures.

There is no dispute that Reussow was suspended for twenty days because of his involvement in allegedly prohibited political activity. While he apparently does not admit that this activity was improper, Reussow does not challenge this suspension. On its completion, he returned to active duty. It was only then, after he had accepted this disciplinary action—which is all that was authorized by the city government acting through and according to its municipal ordinances, that he was called into the office of the chief of police and given the bad news.

Defendants argue that procedural due process regarding termination of Reussow's employment cannot be an issue since Reussow resigned from his job. Reussow's position is that he did not resign voluntarily but was constructively discharged. This concept of "constructive discharge" has been recognized by both federal and state courts in adjudicating claimed violations of civil rights arising from employment. *See, e. g., Muller v. U. S. Steel Corporation*, 509 F.2d 923 (10th Cir. 1975), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140 (5th Cir. 1975); and *Colorado Civil Rights Commission v. State of Colorado, School District No. 1*, 30 Colo.App. 10, 488 P.2d 83 (1971). As stated in *Young v. Southwestern Savings & Loan*, 509 F.2d at 144: "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable . . . as if it had formally discharged the aggrieved employee." In this case, Reussow alleges that after his return to active duty, he was called into the office of the chief of police, where it was made very clear that he would not receive his scheduled merit pay raise, that he would not receive any additional training, that he would not be considered for promotion regardless of his eligibility, and that his career had reached a "permanent plateau."

(13) Employment elsewhere during working hours without written consent of the department head.

(14) Failure to report to work without reason. Habitual tardiness.

(15) Failure to report back to work after a leave of absence.

(16) Failure to pay just debts without reason. Garnishing of check shall be prima facie evidence of failure to pay just debts.

(17) Engaging in political activities prohibited by this chapter.

(18) Using or attempting to use political influence to secure promotion.

(19) Conduct unbecoming an employee.

(20) Immoral conduct.

(21) Drunkenness on duty or habitual intemperance.

(22) Causing public scandal in the service.

(23) Causing a low morale in the organization.

(24) Fraudulently obtaining sick or injury leave.

(25) For any other just or reasonable cause.

**2.** *Section 9–12.1. Dismissal.*

(b) *Written statement.* All dismissals must be by written statement giving the reasons and all pertinent facts for such action, a copy of which must be delivered to the employee concerned, a copy to the chairman of the civil service commission and a copy to the secretary of the civil service commission to be placed in the personnel records of the employee.

(c) *Hearing.*

(1) The civil service commission, if requested by the employee concerned, within forty-eight hours of notice of dismissal, shall within ten days hold a hearing concerning such dismissal.

All such hearings by the commission shall be conducted informally and the legal rules of evidence shall not apply. The commission shall within three days of the conclusion of such hearing make its written findings and recommendations and/or order and file a copy thereof with the secretary of the commission for filing in the personnel records of the employee, the city manager, the city clerk for report to the city council, the employee concerned and his counsel, if any.

(2) All hearings before the commission under this section shall be open to the public unless the employee concerned shall request in writing such hearing be closed. Employees appearing at such hearing shall have the right to be represented by counsel and at all hearings before the commission, the city attorney shall appear and represent the city manager.

If these allegations are supported, Reussow can show that he was constructively discharged and that his resignation from the police department was not voluntary.

The burden of proof, as well as the burden of going forward, in discharging an employee for cause is on the employer, not the employee. The Greeley ordinances provide at Section 9–12.1(b) that "[a]ll dismissals must be by written statement giving the reasons and all pertinent facts for such action . . . ." Where there are allegations of constructive discharge, a likely response of an employer is that dismissal was not intended and that procedural requirements were not called into play. It is true that allegations of constructive discharge cause wrinkles in the usual due process setting, *see, e. g., Lyons v. Sullivan*, 602 F.2d 7, 9–10 (1st Cir. 1979); *English v. Powell*, 592 F.2d 727, 731 (4th Cir. 1979), as do situations where an employee has foregone available procedural rights *after* his government employer has met its initial obligation to provide him with notice of its intended action and of his opportunity to seek review, whether by mistake or otherwise. *See, e. g., Abbruzzese v. Berzak*, 601 F.2d 107, 109–10 (3d Cir. 1979); *Sartin v. Commissioner of Public Safety*, 535 F.2d 430, 432 (8th Cir. 1976). The purpose of the constructive discharge concept is to prevent an employer from engaging in wrongful conduct that he could not engage in formally. The question is whether an employee can in fact show that he was constructively discharged. Viewed in their most favorable light, Reussow's allegations show that he was constructively discharged.

## II

Reussow's second claim under Section 1983 is that his discharge was an improper infringement of protected First Amendment interests; that is, that it was motivated by his involvement in political activity.[3] While it is clear that plaintiff had a protected property interest in his employment, such an interest is not required in order for a public employee to gain protection against First Amendment infringements. *See Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *Bertot v. School District No. 1, Albany County, Wyoming*, 522 F.2d 1171, 1177 (10th Cir. 1977).

There is no dispute that public employees do not waive their constitutional rights upon accepting that employment, *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), or that public as well as private employees enjoy the First Amendment's guarantee of freedom of association. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Still, these First Amendment interests may be limited more than those of the public generally. *See Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. State of Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); and *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, the court said:

> At the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employ-

---

3. *Section 9–14. Engaging in political activity not permitted while employed.*

. . . Any classified employee shall not seek or accept election, nomination or appointment as an officer of a political club or organization, or take an active part in county, state, federal or municipal campaign, or serve as a member of a committee of such club or organization or seek signatures to any petition provided for by law, or act as a worker at the polls or distribute pages or pamphlets, dodgers or handbills of any kind favoring or opposing any candidate for election, nomination or appointment to a public office; provided, however, nothing in this section shall be construed to prevent any such employee from becoming or continuing to be a member of a political club or organization, or from attendance at a political meeting, or from enjoying entire freedom from all interference in casting his vote.

Any willful violation of this section, or violation through culpable negligence, shall in itself be sufficient grounds to authorize the discharge of any such classified employee.

ees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. *The problem in any case is to arrive at a balance* between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. 391 U.S. at 568, 88 S.Ct. at 1734–1735 (emphasis added).

■ The importance of these decisions to the instant case is that the First Amendment interests of public employees are not lost altogether, but are only subject to reasonable accommodation with legitimate government interests. Political activity can be constrained by reasonable regulations that are evenly applied, but cannot provide a basis for harassment or retaliation that takes place outside the proper procedure for resolving alleged instances of improper activity. *See, e. g., Hollifield v. McMahan,* 438 F.Supp. 591, 593 (E.D.Tenn.1977). The allegations here are that Reussow was discharged after he had completed the period of suspension that was the only disciplinary action officially imposed on account of his political activity and that the "you're finished in Greeley" pronouncement of Eddington was not within the bounds of those constraints that a government may properly impose on its employees.[4]

I emphasize that this is not a case where there are any allegations of independent justification for plaintiff's discharge. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). There is no allegation that plaintiff's job performance was inadequate or that he was subject to discharge for any of the other twenty-four reasons listed in the city ordinances. It is not an independent justification that plaintiff had allegedly engaged in political activity that

the city believed was properly proscribed. That matter had already been resolved. Plaintiff's discharge, as alleged, was exactly the sort of intrusion that the First Amendment and due process were intended to prevent.

### III

■ Plaintiff's third claim under Section 1983 is that actions by the defendant police chief following his discharge injured his good name and reputation, and interfered with his employment opportunities. The allegations are that Eddington called the Weld County Sheriff's Office where plaintiff had applied for a job "and advised them that if they wanted to continue having good relations with the Greeley Police Department they had better not hire Reussow." (Complaint, at ¶ 28.) Plaintiff says that he believes he would have been hired by the Weld County Sheriff if not for this communication. Plaintiff also alleges on information and belief that similar communications were made to two other area law enforcement agencies where plaintiff had applied for work. Because of these communications, plaintiff says he has been unable to obtain employment in his chosen field in the area in which he lives. (Complaint, at ¶¶ 32–33.)

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court said that allegations of defamation do not by themselves state a cause of action under Section 1983. Here, however, the defamation accompanied the loss of government employment, *see Paul v. Davis,* 424 U.S. at 706, 96 S.Ct. 1155, and was part and parcel of the course of conduct that plaintiff alleges was undertaken in retaliation for his First Amendment activity. *See Blevins v. Kreutzman,* 446 F.Supp. 1107 (E.D.Wis.1978); *Tanner v. McCall,* 441 F.Supp. 503 (M.D.Fla.1977). The alleged defamation was not caused by evaluations

4. A question has appeared in the briefs whether plaintiff's activity was the sort properly prohibited by the Greeley city ordinance, since it might arguably apply only to partisan political efforts. Plaintiff does not attack either the ordinance itself or the period of suspension that was imposed thereunder. A construction of the ordinance and an appraisal of its constitutionality, as well as a determination of the exact character of plaintiff's activity, are therefore outside the scope of this action and would involve the court in unnecessary questions of constitutional law.

or statements that might have been included in plaintiff's employment records that a prospective employer would likely have a chance to review, but by defendant Eddington's intentional conduct in contacting plaintiff's prospective employers. Not only did these communications directly interfere with plaintiff's opportunities to find a job, but they were allegedly backed by Eddington's "advice" that anyone hiring plaintiff would no longer have "good relations" with the Greeley police department. Such "advice" standing alone would support a § 1983 claim. Accordingly, it is

ORDERED that defendants' motion to dismiss is denied. Defendant shall answer the complaint within twenty days.