Ahmad BODAGHI, Complainant–
Appellee,

and

State Personnel Board, State
of Colorado, Appellee,

v.

DEPARTMENT OF NATURAL
RESOURCES, Respondent–
Appellant.

No. 95CA0577.

Colorado Court of Appeals,
Div. I.

Aug. 8, 1996.

Rehearing Denied Oct. 17, 1996.

Certiorari Granted Aug. 25, 1997.

James R. Gilsdorf, Denver, for Complainant–Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, G. Charles Robertson, Assistant Attorney General, Denver, for Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, David F. Steinhoff, Assistant Attorney General, Denver, for Respondent–Appellant.

Opinion by Judge CRISWELL.

Respondent, the Colorado Department of Natural Resources (Department), seeks review of an order entered by the State Personnel Board (Board), which determined that the Department had failed to promote com-

plaintant, Ahmad Bodaghi, because of his national origin and which awarded complainant full back pay and benefits and attorney fees. Because we conclude that the evidence was insufficient, as a matter of law, to sustain that determination, we reverse the Board's order.

In 1984, complainant, who was born in Iran, began his employment as an Engineer A with the State Land Board, an agency within the Department. Complainant worked at the Land Board until he failed to receive the subject promotion in April 1993.

After 1984, complainant was promoted to four positions of increasingly higher grade within the Land Board, the fourth such position being that of Engineering/Physical Sciences Technician II, grade 87. Complainant, who had consistently been assigned additional duties, was upgraded and reallocated to the Technician II position as a result of a desk audit of the position to which he had been previously assigned. Complainant was selected for the reallocated position of Technician II without the necessity of competing with other candidates.

After complainant's position was reallocated to Technician II, he continued to assume additional duties, including assumption of nearly exclusive responsibility for the Land Board's right-of-way acquisition program. As a result of these additional responsibilities, complainant asked for another desk audit of his position.

In January 1993, a desk audit, which was based largely on a job description of the position prepared by complainant, resulted in complainant's position again being reallocated upward, this time to Program Administrator I, grade 95. This upgrade represented a dramatic increase in salary and in grade over complainant's former position and was classified as a management-level, administrative position, as distinguished from his former position, which was classified as technical in nature. However, the newly reallocated position's job duties were the same as those that complainant had been successfully performing for some time.

Immediately after this reallocation decision was made, complainant's appointing authori-ty, who had recently assumed that position with the Land Board, issued a routine job announcement describing the duties and requirements of the reallocated position, as well as the qualifications of those who could apply for the position. Instead of posting the job announcement on the Land Board's bulletin board and on its electronic mail as had been the past practice, complainant's new appointing authority circulated a memorandum, together with the job announcement, in which he stated that he would, in the future, "personally circulate notices of this nature as a matter of course" to the Land Board staff. He also announced the availability of the reallocated position at a staff meeting.

Another Land Board employee's position was similarly reallocated and upgraded at the same time, again as a result of a desk audit. Three days after the circulation of the memorandum with respect to complainant's reallocated position, a substantially similar memorandum was circulated to the Land Board staff, announcing the opening for this other reallocated position.

Three individuals, including complainant, all of whom were among the 26 staff members of the Land Board, applied for complainant's reallocated position. Because there were fewer than four applicants for the position, a competitive test of competence administered by the state personnel department was not required. *See* Colo. Const. art. XII, § 13(5). However, the appointing authority devised and implemented a job selection process and convened a four-member panel, which included himself, to assist him in his selection. The selection process consisted of three parts: (1) the preparation by the candidate of a briefing paper; (2) a two-hour written examination; and (3) a one-hour interview before the panel.

According to the appointing authority, he implemented this selection process for complainant's reallocated position because there were very few upper level positions within the Land Board; other Land Board staff wanted a more open hiring process for higher level positions; and he wanted to select the most qualified person for this important job. He also testified that he planned to use

this same selection process for the other reallocated position, but did not do so because the only applicant for that position was the incumbent.

The panel members unanimously ranked the successful applicant first and complainant second based on their respective performance on the three-part interview and examination process. The appointing authority stated that he selected the successful applicant because he was the best qualified candidate for the job. He testified that that applicant's appraisal experience was one of the factors used in his selection. As a result of this selection, complainant was transferred to another position without any reduction in the pay that he had been receiving.

Complainant initiated an appeal with the Board, asserting that he had been discriminated against as a result of his national origin. In making this assertion, complainant contended that it was the appointing authority's decision to employ a selection process, rather than automatically appointing him, the incumbent, to the upgraded position, which evidenced improper discrimination. Specifically, he did not, and does not, assert that the four-member panel's ranking of the successful applicant was ethnically or racially motivated.

Complainant's appeal was ultimately referred to an Administrative Law Judge (ALJ), who conducted an evidentiary hearing and issued lengthy and detailed findings and conclusions, upholding claimant's assertion of discrimination. The ALJ found that the decisions to institute "a rigorous selection procedure totally unlike anything that had been done before at the Land Board under similar circumstances" was a discriminatory act; that the Department's reasons for not automatically selecting complainant for the reallocated position were pretexts for discrimination; and "that the hiring procedure was implemented for the intended purposes of filling the [reallocated] position with someone other than the [complainant] because of the [complainant's] national origin." The Board adopted the ALJ's findings and conclusions in their entirety and ordered that complainant be appointed to the reallocated position with full back pay and benefits.

The Department contends that there was insufficient evidence to support the Board's finding that it had discriminated against complainant based on his national origin. It argues that complainant failed to prove that its proffered non-discriminatory reasons, either for implementing the selection process itself or for ultimately selecting the other applicant, were pretexts for improper discrimination. We agree.

Colorado personnel regulations prohibit discrimination for or against any person "in ... examination, hiring, classification and compensation ... promotion, retention, assignment of duties, granting of rights and benefits, or any other personnel action ..." because of national origin or ancestry. Personnel Board Policy 11–1, 4 Code. Colo. Reg. 801–1; *see* § 24–34–402(1), C.R.S. (1995 Cum.Supp.).

■ Prohibited discrimination occurs if an employer treats one class of employees less favorably than others because of race, color, religion, sex, or natural origin. While proof of discriminatory motive is necessary, direct evidence of discriminatory intent is not required, and it can sometimes be inferred from the discriminatory treatment alone. However, a complainant may be required to show more than a mere difference in treatment to prove an unlawful discriminatory intent. *St. Luke's Hospital v. Colorado Civil Rights Commission,* 702 P.2d 758 (Colo.App. 1985).

Discrimination is often insidious, and it may be difficult to obtain direct evidence of its existence through overt acts or statements of its perpetrators. Usually it can be proven only by drawing reasonable inferences from an act or statement, or from a series of events or statements. *Adolph Coors Co. v. Colorado Civil Rights Commission,* 31 Colo.App. 417, 502 P.2d 1113 (1972).

Because of this difficulty of proof, the United States Supreme Court has devised a three-stage, burden-shifting, framework for analysis by the federal courts in cases of claimed discrimination in employment. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v.*

*Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That same analysis has been employed by state courts for claims of employment discrimination under state law. *See Synacek v. Omaha Cold Storage Terminals, Inc.,* 247 Neb. 244, 526 N.W.2d 91 (1995).

Here, all of the parties tried, and the ALJ and the Board determined, the issues raised by using the *Hicks* analysis. That analytical framework is one that is generally recognized and provides specific guidance for trial tribunals to assess the sufficiency of the evidence. Moreover, that analysis, as applied by the lower federal courts, is consistent with the approach taken in such cases by Colorado's appellate courts. *See Colorado Civil Rights Commission v. State of Colorado,* 30 Colo.App. 10, 488 P.2d 83 (1971). Hence, while we are not bound to use the *Hicks* approach in applying the applicable state statute, given the circumstances here, we conclude that it would be appropriate to do so.

Under the *Hicks* approach, the burden of proof is initially placed upon a plaintiff to establish a prima facie case of discrimination. That initial burden may be satisfied by evidence that: (1) the employee is a member of a protected class; (2) he or she was qualified for an available position or promotion; (3) he or she did not receive the position or promotion; and (4) the position or promotion was filled by someone not a member of a protected class. *McDonnell Douglas Corp. v. Green, supra.*

If the plaintiff establishes such a prima facie case, a presumption then arises that the employer unlawfully discriminated against the plaintiff. This presumption "places upon the defendant the burden of producing an explanation to rebut the prima facie case, *i.e.,* the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 507, 113 S.Ct. at 2747, 125 L.Ed.2d at 416.

Significantly, however, the presumption created shifts only the burden of *production;*

the "ultimate burden" of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains on the plaintiff. *St. Mary's Honor Center v. Hicks, supra.*

Here, the ALJ applied the *Hicks* analysis and determined that complainant had established a prima facie case of national origin discrimination. He also concluded that the Department had satisfied its burden of production by introducing evidence of nondiscriminatory reasons for its actions. Both parties agree that the evidence supports these two determinations.

Complainant introduced uncontroverted evidence that he was born in Iran; that he sought and was qualified for the reallocated position; that he was not selected for the position; and that the position was given to another applicant who was not of Iranian descent.

Thereafter, the Department presented evidence of nondiscriminatory reasons for its actions, asserting that the appointing authority implemented the selection process to assist him in selecting the most qualified applicant for this high-level and much sought-after position and that the successful applicant, not complainant, was ultimately selected because he was the most qualified applicant.

If, as here, a defendant carries its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted and "drops from the case." *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 416. Hence, a defendant need not *persuade* the tribunal that it was actually motivated by legitimate reasons. Rather, the burden of convincing the trier of fact continues to be placed on the plaintiff, and he or she must prove not only that the proffered reasons were not the real reasons for the employment decision, but also that unlawful discrimination was the motivating cause. *St. Mary's Honor Center v. Hicks, supra; Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir.1995)("[P]laintiff must introduce sufficient evidence to support two findings: (1) that the employer's articulated reasons for laying off the plaintiff is a pretext, and (2)

that the true reason is discriminatory."); *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir.1993) ("Once the employer has met its burden of production, the plaintiff's burden of persuasion then arises and he must prove that the proffered reasons are not just pretexts but *pretexts for [national origin] discrimination.*" (emphasis in original)).

If the plaintiff produces evidence that the defendant's proffered nondiscriminatory reasons are pretexts for discrimination, the trier of fact may, but is not required to, find discrimination. "[R]ejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and ... upon such rejection, '[n]o additional proof is *required.*'" *St. Mary's Honor Center v. Hicks, supra*, 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–419 (emphasis in original).

In applying the *Hicks* formulation, the federal courts have consistently held that, if the employer meets its burden of production, a plaintiff must produce sufficient other evidence for the fact finder reasonably to reject the employer's proffered reasons as pretexts for unlawful discrimination. *See Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994)("Durham has not offered sufficient evidence to support a finding that Xerox's stated reason was a pretext for discrimination."); *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994)("The jury may not reject an employer's explanation, however, unless there is sufficient basis *in the evidence* for doing so. To allow the jury to simply refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit." (emphasis in original)); *Bodenheimer v. PPG Industries, Inc., supra*, 5 F.3d at 957 ("To prevail ultimately, the plaintiff must prove, through a preponderance of the evidence, that the employer's reasons were not the true reasons for the employment decision *and* that unlawful discrimination was." (emphasis in original)). *See also Randle v. City of Aurora*, 69 F.3d 441 (10th Cir.1995) (evidence sufficient to establish prima facie case is sufficient to support a judgment for plaintiff, but only if the evidence demonstrates a reasonable basis for finding that reasons advanced by employer were a pretext for an improper discriminatory motive).

In the absence of such evidence, the defendant is generally entitled to a judgment, as a matter of law. *See Manzer v. Diamond Shamrock Chemicals Co., supra* (affirming district court's directed verdict for employer at the close of evidence where there was insufficient evidence challenging the credibility of employer's explanations); *Durham v. Xerox Corp., supra* (affirming summary judgment for employer where plaintiff failed to offer sufficient evidence that employer's proffered reason was a pretext for unlawful discrimination); *Woods v. Friction Materials, Inc.*, 30 F.3d 255 (1st Cir.1994)(same); *Bodenheimer v. PPG Industries, Inc., supra* (same).

A similar analysis was employed in *Colorado Civil Rights Commission v. State of Colorado, supra*, 30 Colo.App. at 20, 488 P.2d at 87, in which it was said:

> Racial discrimination may not be inferred... where the surrounding facts supporting such an inference are absent. *Even though the Commission chose to disbelieve or disregard material evidence indicating a proper basis for discharge did exist, the necessary inference of discrimination is not in evidence in the record before us.* (emphasis supplied)

Hence, applying this analysis here, we must determine whether there was sufficient evidence to support the ALJ's finding that the Department's proffered reasons for implementing the selection process and ultimately selecting the successful applicant were pretexts for discrimination based on complainant's national origin. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996)(en banc).

On review, factual determinations of an administrative agency may not be disturbed if they are supported by substantial or competent evidence in the record. *United Financial Credit v. Colorado Collection Agency Board*, 892 P.2d 446 (Colo.App.1995).

Facts as found by an ALJ are binding on review, if they are supported by substantial evidence. *McClellan v. Meyer,* 900 P.2d 24 (Colo.1995); *El Paso County Department of Social Services v. Donn,* 865 P.2d 877 (Colo. App.1993).

Whether a finding is supported by substantial evidence, however, is a question of law. *Atchison, Topeka & Santa Fe Ry. Co. v. Public Utilities Commission,* 763 P.2d 1037 (Colo.1988).

■ Here, complainant contends only that the selection process was *implemented* for a discriminatory reason and that, but for that process, he, as the incumbent, would have been selected for the reallocated position. We will assume that, if an unlawful motive for using the selection process were proven, such circumstance would constitute an actionable form of prohibited discrimination. *See* § 24–34–402(1), C.R.S. (1995 Cum. Supp.); Personnel Board Policy 11–1, 4 Code. Colo. Reg. 8010–1.

However, given this allegation, complainant was required to offer substantial evidence to support two findings: (1) that the Department's proffered reasons for implementing the selection process were a pretext and (2) that the *true* reason for its implementation was to discriminate against complainant because of his *national origin.*

Complainant offered evidence that, before the reallocation of complainant's position, the appointing authority had filled most other positions within the Land Board without a formal selection process; that, if a reallocated position had an incumbent, the incumbent historically was selected for the position; that the previous times when the appointing authority had employed a similar selection process, the vacant positions were not occupied by an incumbent; and that the appointing authority had not previously circulated a memorandum announcing the opening of reallocated positions. While the Department offered explanations for each of these facts, this evidence alone, viewed in the light most favorable to complainant, was sufficient to support a finding that the appointing authority's proffered reasons for implementing the selection process for the reallocated position were pretextual.

However, this evidence, standing alone, was *not* sufficient to support a reasonable inference that the real reason for the selection process was for some *improper discriminatory* reason. To the contrary, both complainant himself and other staff members at the Land Board uniformly testified that, in their opinions, the appointing authority implemented the selection process so that he could favor one of the staff members with whom he had previously worked in another agency. These same staff members also uniformly testified that, in their opinions, complainant's national origin was not the basis for the implementation of the selection process or for the selection of the successful applicant.

While the appointing authority's intent to hand-pick the person for the reallocated position, even if he was the most qualified candidate, may be improper under some personnel rules, complainant bases no claim upon such an assertion. And, such evidence, alone, is not sufficient to imply *national origin discrimination. See Udo v. Tomes, supra.*

We conclude then, as a matter of law, that the record lacks substantial evidence to support the ALJ's finding that the Department's proffered reasons for implementing the selection process were pretexts for discrimination against complainant based on his national origin. Accordingly, we reject the Board's conclusion that the Department unlawfully discriminated against complainant in not selecting him for the reallocated position.

Given this conclusion, we need not address the Department's other assertions of error.

The order is reversed.

METZGER and TURSI*, JJ., concur.

* Sitting by assignment of the Chief Justice under      provisions of the Colo. Const. art. VI, Sec. 5(3),