502 P.2d 1113 (1972)
ADOLPH COORS COMPANY, Plaintiff-Appellee,
v.
COLORADO CIVIL RIGHTS COMMISSION, Defendant-Appellant, and
Booker T. Mays, Intervenor.
No. 71-360.
Colorado Court of Appeals, Div. II.
November 8, 1972.
*1114 Bradley, Campbell & Carney, Leo N. Bradley, Earl K. Madsen, Golden, for plaintiff-appellee.
Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., Jeffrey I. Sandman, Asst. Atty. Gen., Denver, for defendant-appellant.
Edward J. Scheunemann, Denver, for intervenor.
Selected for Official Publication.
PIERCE, Judge.
This appeal involves the disputed discharge of an employee of the Adolph Coors Company (Coors). The following facts are condensed from specific findings adopted and supplemented by the Colorado Civil Rights Commission from hearings before a hearing officer appointed by the Commission.
Booker T. Mays, Sr. was first hired in 1962, by Coors, in the company's construction department. He was the first black man to be employed by Coors. In November 1963, after the company waived its policy of not hiring convicted felons in its brewery operation, he was transferred to the brewery.
From time to time, during his employment, Mays encountered racial prejudice and harassment perpetrated by some white hourly employees. He was also involved in several incidents in which he was charged by his supervisors with infractions of company rules. With the exception of one reprimand, however, the company overlooked these infractions. The company hired his son as an employee, and at one time provided Mays with additional education at Emily Griffith Opportunity School, which he was later forced to discontinue due to a change in his work schedule. Once, after a dispute with the company, Mays tendered his resignation, which the company refused to accept. On February 18, 1969, Mays was permanently discharged from his job at Coors for defying a company order.
Mays contends that his discharge was motivated by racial prejudice, contrary to the provisions of the Colorado Anti-Discrimination Act, and offers the following specific incidents as evidence thereof:
1. In 1964, during the pendency of the passage of the Civil Rights Act, William Coors, president of the corporation, stated his views at an employees' meeting regarding the pending legislation. It was his opinion that the proposed law contained a quota hiring system for minority persons and that this might cause unemployment for some of the non-white employees. This legislation did not contain such a quota provision.
2. In 1966, at the request of a union official, a vice president of the company called a meeting of all black employees. Although there is dispute as to exactly what was discussed at the meeting, it did concern racial discrimination.
*1115 3. In 1968, Mays brought to the attention of William Coors the fact that, on several occasions in 1964, his supervisor had requested that Mays get him a "nice colored girl" for a date. A conference was held with Mr. Coors, Mays, and the supervisor. The supervisor denied having made the remark. Mr. Coors informed both Mays and the supervisor that, if they both submitted to polygraph examinations, the one found to be prevaricating would be summarily discharged. It was later determined that the supervisor was not telling the truth, but he was not discharged by the company at that time. He was, however, discharged at a later time for having made a racist statement to fellow employees.
4. After the polygraph incident and a work regulation reprimand in 1968, Mays filed a complaint with the Colorado Civil Rights Commission against the supervisor involved in the polygraph incident and the company, alleging discrimination. This action was dropped, however, by Mays after he and the company reached an agreement which stated, among other things, that all past grievances between the parties were a result of misunderstanding, and that all reprimands against Mays were to be removed from his personnel folder.
5. In August 1968, Mays received another reprimand for violation of work rules which he briefly protested.
6. Finally, in February 1969, the series of events transpired which culminated in the termination of Mays' employment. These occurrences were:
A. On February 10, 1969, after noting a substantial decline in the number of beer cartons being handled at Mays' work station, investigation indicated that Mays had overstayed a relief break for seven minutes, which he did not deny. Several days later, he stated that the reason for this infraction was that he had had a nosebleed. However, he had not mentioned this to his supervisor or the investigator at any time on February 10th.
B. On February 12, 1969, he was again investigated and found to be away from his work station three minutes beyond his relief break privilege. At this time, he stated that he had been on different floors in the building, searching for medicine to relieve a headache. He was then informed by his supervisor that disciplinary action would be taken because of the February 10th and 12th violations. For the following two days, Mays called in sick and did not report for work. Upon his return, he filed a grievance with his union, charging that he was being harassed by the company, without justification, because of the February 10th and 12th incidents.
C. On February 17th, a meeting between Mays, his supervisor, and a union representative was held. Mays was advised that he was being given a five-day disciplinary layoff because of his abuses of relief breaks on February 10th and 12th. Mays stated that he would refuse to accept the disciplinary action unless it was given to him in writing, or unless his name was removed from a posted work schedule. The supervisor informed him that, if he intended to report for work, he would be subject to discharge and that, if he felt the suspension was unjust, there were grievance procedures available to him. Mays was well aware of the grievance procedures, having had considerable experience with them. At Mays' request, a meeting was scheduled with the president of the company the following day to review the latest disputes between Mays and the company.
D. Mays then telephoned his union business representative and stated that he was fearful that if he failed to show up for work without a written disciplinary notice, while his name was still on the work schedule, he would be discharged. The union representative assured him that, if the company told him that he was being given a five-day layoff, he would be laid off for that period of time as the company would never back down from this type of discipline.
E. In spite of these warnings, Mays appeared at the brewery on February 18, *1116 1969, and began work. Shortly thereafter, he was summoned to the supervisor's office and discharged for defying a disciplinary order. The grounds for the disciplinary order and the discharge were sanctioned by the terms of the collective bargaining agreement between Coors and Mays' union. Mays was the first employee of the company to so defy a disciplinary layoff order. However, there was no discrepancy shown between the disciplinary actions imposed upon Mays and those imposed upon non-minority employees under similar circumstances.
Following his termination, Mays filed a complaint with the Colorado Civil Rights Commission. Hearings were conducted in the presence of several members of the Commission, by a hearing examiner appointed by the Commission. The hearing examiner found that Mays' termination was not in any way related to his race and recommended that his complaint be dismissed. The Commission adopted the factual findings of the hearing examiner, but reached the conclusion that one motivating factor for Mays' discharge was his race. It ordered that he be reinstated in his job and that he receive back pay.
Coors appealed to the District Court of Jefferson County, which held further hearings, made additional findings of fact and conclusions of law, and reversed the Commission's ruling. Mays appeals. Since the trial court had no jurisdiction to make separate findings of fact, we have considered only the findings of fact and conclusions of law as reached by the Civil Rights Commission and, upon consideration of these determinations, we affirm the trial court as to the result reached.
The parties are in general agreement that the law to be applied to the fact situation before us is found in Colorado Civil Rights Commission v. State ex rel. School District No. 1, 30 Colo.App. 10, 488 P.2d 83. We agree.
In that case, we recognized the fact that recial discrimination is often insidious and that it is very difficult to obtain direct evidence of its existence through single overt acts or statements of its perpetrators. Usually it can only be proved by drawing reasonable inferences from an act or statement, or from a series of events or statements which, when viewed as a whole, display a pattern of discrimination sufficient to carry the burden of proof. For example, we found discrimination in Texas Southland Corporation v. Hogue, 30 Colo. App. 560, 497 P.2d 1275, where the employer alleged certain facts which precipitated the discharge, and it was learned at the hearing that those facts did not come to the employer's knowledge until after the discharge. However, in Colorado Civil Rights Commission v. State ex rel. School District No. 1, supra, we also held that when an employee is discharged for what is apparently a legitimate reason, as here, the discharge should be sustained unless the claimant can prove by substantial evidence that one reason for the discharge was racial discrimination.
In order to establish his claim that his discharge was a result of racial discrimination, Mays would have to show a nexus between the acts which he claimed were discriminatory and his subsequent discharge. From the facts before us, the only activity by Coors which could possibly raise an innuendo of discrimination would be the polygraph incident. However, the Commission found that there is no evidence that the supervisor involved in that incident was consulted or had anything to do with the February 10th and 12th incidents, or with the disciplinary layoff and Mays' subsequent termination. Because there is no connection between the incidents, no reasonable inference can be drawn from the one to suggest that the other resulted from discrimination. Nor do we find anything in the totality of the other incidents complained of by Mays that is connected with his ultimate discharge. The record falls far short of establishing substantial evidence of discrimination resulting in termination. It is unreasonable, therefore, to conclude that the motives behind *1117 his discharge were any other than would have been exercised against a nonethnic employee.
As there is no substantial evidence to support the final determination of the Commission, the trial court properly set aside the Commission's order.
Judgment affirmed.
DWYER and ENOCH, JJ., concur.