COLORADO CIVIL RIGHTS
COMMISSION and Karen
Thurman, Petitioners,

v.

BIG O TIRES, INC., Respondent.

No. 96SC184.

Supreme Court of Colorado,
En Banc.

June 30, 1997.

Rehearing Denied July 28, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Deputy Attorney General, Michael P. Serruto, First Assistant Attorney General, Civil Litigation Section, Denver, for Petitioner Colorado Civil Rights Commission.

Davis, Graham & Stubbs LLP, David R. Hammond, Andrew M. Low, Martin J. Katz, Brett C. Painter, Denver, for Respondent.

Barry D. Roseman, Denver, for Amicus Curiae Plaintiff Employment Lawyers Association.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals decision in *Thurman v. Big O Tires, Inc.*, No. 94CA1076 (Colo.App. Dec. 21, 1995) (not selected for official publication), in which the court of appeals vacated the order of the Colorado Civil Rights Commission (the Commission). The court of appeals held that the record did not support a finding that Big O Tires, Inc. (Big O), discriminated against Karen Thurman (Thurman) because of her race when it discharged her. We granted certiorari to determine whether, in a claim of employment discrimination, additional evidence is required to infer intentional discrimination where a *prima facie* case of discrimination is proven and the employer's reasons for the employment decision are found to be a pretext for discrimination. We hold that no additional evidence is required to infer intentional discrimination in such circumstances and that in the current case, the court of appeals erroneously determined that additional evidence was necessary to support a finding of discrimination by Big O. We therefore reverse the court of appeals, reinstate the Commission's order finding discrimination against Thurman by Big O, and remand this case to the court of appeals with directions to consider the remaining undecided issues raised in Big O's notice of appeal.

## I.

Thurman, an African–American woman, was employed by Big O as an inside sales clerk from April 9, 1987, to May 16, 1991. Big O paid Thurman an hourly wage and required her to record all of her hours on a mechanical time clock. Thurman's principal duties, along with two other employees who comprised the inside sales group, involved receiving telephone orders from Big O tire dealers and processing those orders for the warehouse, which in turn distributed the ordered merchandise to the dealers. At the time Thurman was terminated, she was the lead person for the inside sales group.

According to Big O, Thurman was terminated from her employment due to her violations of the company's policies regarding use of the mechanical time clock. In general, the policies required (1) that employees punch in and out at the beginning and end of work periods; (2) that employees punch out and in for lunch breaks; (3) that employees take lunch breaks for a specific length of time; and (4) that employees obtain a supervisor's approval and initials for any variations from the time clock policies. Apparently, Thurman had violated these time clock policies on numerous occasions from May 30, 1989, through April 24, 1991. Thurman received a written warning on April 24, 1991, indicating that her time clock violations were an ongoing problem and that termination would be the next step. On May 13 and 15, 1991, Thurman failed to clock out and in for her lunch break. On May 16, 1991, Thurman was terminated from her employment.

Another member of the inside sales group, Cherie Edmonds (Edmonds), a Caucasian woman, began working for Big O approximately one year after Thurman began her employment. Like Thurman, Edmonds violated Big O's time clock policies on numerous occasions from March 20, 1989, through May 24, 1991. Like Thurman, Edmonds received a written warning on April 24, 1991, indicating that her time clock violations were a serious problem and that termination would be the next step. On May 14, 1991, Edmonds worked through lunch without supervisor approval and left work early without supervisor approval, in violation of the time

clock policies. On May 15, 1991, Edmonds was absent one-half of the day without supervisor approval. However, unlike Thurman, Edmonds received no immediate disciplinary action as a result of her time clock violations committed on May 14 and 15, 1991.

On May 22, 1991, Thurman filed a complaint with the Commission, alleging that Big O had discriminated against her on the basis of her race in violation of section 24–34–402, 10A C.R.S. (1988). Thurman's charge included the allegation that Edmonds had committed time clock violations at least as serious as those Thurman had committed, but Edmonds had not been discharged. Shortly after Big O received notification and a copy of Thurman's charge, Edmonds' supervisor reviewed her records. On June 25, 1991, Edmonds' supervisor terminated her employment, citing her violation of the time clock policies on May 14 and 15, 1991, as the reason for termination.

On October 12, 1991, the Commission issued a notice of determination and finding of probable cause. A hearing was held from May 18 through May 22, 1992. On October 15, 1992, the administrative law judge (ALJ) issued a decision finding that Big O had discriminated against Thurman on the basis of her race. Big O appealed to the Commission, which affirmed the ALJ's finding of discrimination. Big O then appealed to the court of appeals, which reversed the ALJ's finding of discrimination. The court of appeals found that the record did not support the ALJ's finding that Big O was motivated by race when it terminated Thurman's employment.

## II.

### A.

We must determine whether, under our state law, intentional discrimination may be inferred where a *prima facie* case of discrimination is proven and the reasons given for an employment decision are found to be a pretext for discrimination. Although we have not yet ruled on the evidence necessary

for proving intentional discrimination in employment cases, the court of appeals has done so in two previous decisions.

In *Colorado Civil Rights Commission v. State*, 30 Colo.App. 10, 18, 488 P.2d 83, 87 (1971), the court of appeals recognized that, in cases alleging discrimination, direct evidence of overt discrimination is not a prerequisite to a finding of discrimination. However, the court of appeals held that, when an employee is discharged for what is apparently a legitimate reason, racial discrimination may not be inferred as a basis for the discharge unless such discrimination is supported by substantial evidence. *Id.* at 20, 488 P.2d at 87. Likewise, in *Adolph Coors Co. v. Colorado Civil Rights Commission*, 31 Colo.App. 417, 423, 502 P.2d 1113, 1116 (1972), the court of appeals held that when an employer asserts a legitimate reason for discharging a claimant, the claimant's discharge should be sustained unless the claimant can prove by substantial evidence that one reason for the discharge was racial discrimination. *Id.* Thus, our court of appeals has determined that intentional employment discrimination may not be inferred without substantial evidence of discrimination. Because this standard fails to address whether intentional discrimination may also be inferred when the employer's reason for an employment decision is found to be pretextual, we look to other jurisdictions for guidance in developing a framework for analyzing claims of employment discrimination.

■ Because the claim in the current case rests on the application of Colorado statutory law, federal law does not control the disposition of this case. However, we find federal law helpful in developing a thorough approach for proving intentional discrimination in state employment discrimination cases. Federal law is particularly helpful in this case because the language of the Colorado statute at issue, section 24–34–402(1)(a), 10A C.R.S. (1988), closely parallels that of its federal counterpart, section 2000e–2(a) of Title VII of the Civil Rights Act.[1]

1. Colorado's statute prohibiting discrimination in employment provides as follows:

(1) It shall be a discriminatory or unfair employment practice:

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth the order and allocation of proof required for employment discrimination claims filed pursuant to Title VII. In *McDonnell Douglas*, the Supreme Court held that the complainant carries the initial burden of establishing a *prima facie* case of discrimination, which may be shown as follows:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824. If the complainant establishes a *prima facie* case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the [complainant's] rejection." *Id.* Once the employer meets its burden, the complainant must then "be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a cover-up for a racially discriminatory decision." *Id.* at 805, 93 S.Ct. at 1826; *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court clarified the effect of rejecting an employer's asserted nondiscriminatory reason for its employment decision:

The factfinder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and ... upon such rejection, "[n]o additional proof of discrimination is required."

*Id.* at 511, 113 S.Ct. at 2749 (emphasis omitted) (citation omitted) (footnote omitted); *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995) (stating that "a showing of pretext is evidence which allows a jury to infer discriminatory intent"). Thus, the Supreme Court has held that a factfinder may infer intentional discrimination based only on findings that a *prima facie* case of discrimination was established and that the reasons given for discharge were a pretext for discrimination.

We now adopt the Supreme Court's analysis set forth in *McDonnell Douglas* and its progeny, which represents a clear and thorough analytical framework for evaluating claims of employment discrimination. However, we modify the language of the *McDonnell Douglas* framework in order to accommodate various kinds of employment decisions and various forms of discrimination.[2] We therefore adopt the following approach for proving intentional discrimination in employment cases. Initially, the complainant must establish a *prima facie* case of discrimination by showing: (i) that the complainant belongs to a protected class; (ii) that the complainant was qualified for the job at issue; (iii) that the complainant suffered an adverse employment decision (*e.g.*, failure to hire, failure to promote, discharge, or demotion) despite his or her qualifications; and (iv) that the circumstances gave rise to an inference of unlawful discrimina-

---

(a) For an employer to refuse to hire, to discharge, to promote or demote, or to discriminate in matters of compensation against any person otherwise qualified because of handicap, race, creed, color, sex, age, national origin, or ancestry....

§ 24–34–402, 10A C.R.S. (1988).

Similarly, Title VII of the Civil Rights Act provides as follows:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2(a) (1994).

**2.** The language of the *McDonnell Douglas* framework is specifically tailored to an employer's failure to hire a complainant based on racial discrimination.

tion. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.[3] If the complainant establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. Once the employer meets its burden, the complainant must then be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a pretext for discrimination.

### B.

■ In the current case, we must determine whether the court of appeals properly held that the record does not support the ALJ's finding that Big O terminated Thurman's employment because of her race. We hold that, under the analytical framework we adopt today, the record contains sufficient evidence to establish that Big O was motivated by race when it terminated Thurman's employment.

In *McDonnell Douglas,* the complainant was an African–American man employed as a mechanic and laboratory technician for McDonnell Douglas Corp. (McDonnell Douglas). On August 28, 1964, the complainant was laid off in the course of a general reduction in McDonnell Douglas' work force. The complainant was a long-time activist in the civil rights movement and subsequently protested McDonnell Douglas' general hiring practices as racially motivated. As part of this protest, the complainant engaged in various acts against McDonnell Douglas, such as a "stall-in" and a "lock-in."[4] On July 25, 1965, McDonnell Douglas advertised that it was seeking qualified mechanics for employment. The complainant applied for re-employment, but McDonnell Douglas rejected the complainant allegedly due to his participation in the "stall-in" and the "lock-in."

In *McDonnell Douglas,* the Supreme Court held that the complainant could rebut McDonnell Douglas' presumptively valid reason for rejecting the complainant by showing that the reason was a pretext for discrimination. *Id.* at 805, 93 S.Ct. at 1825–26. The *McDonnell Douglas* Court stated that in showing pretext, it would be especially relevant for the complainant to introduce evidence that Caucasian persons involved in comparable conduct as the complainant were nevertheless rehired. *Id.* at 804, 93 S.Ct. at 1825. According to the Supreme Court in a subsequent case, a complainant could succeed in proving pretext either by directly showing that a discriminatory reason more likely motivated the employer or by indirectly showing that the employer's proffered explanation is unworthy of credence. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■■ Utilizing the *McDonnell Douglas* approach we adopt today, we first note that Thurman established a *prima facie* case of discrimination by Big O. Thurman presented evidence (a) that she is African–American; (b) that she was qualified for her job as an inside sales clerk; (c) that she was fired from her job; and (d) that the position remained open and was ultimately filled by a Caucasian woman. In rebuttal, Big O articulated a legitimate, nondiscriminatory reason for firing Thurman: that she had violated the company's time clock policies after being warned that such violation would result in her discharge.

However, in response, Thurman presented evidence that Big O's nondiscriminatory reason for her discharge was a pretext for a discriminatory reason. Specifically, Thurman introduced evidence that during the

---

**3.** In failure-to-hire cases, the fourth prong is generally met when the position remains open and is ultimately filled by a person outside the protected class. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). We note, however, that, as stated by the Supreme Court in *McDonnell Douglas,* "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*

*v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973). The reasoning is equally applicable to state law claims of employment discrimination.

**4.** The "stall-in" involved using automobiles to block entry into and exit from McDonnell Douglas' place of business. The "lock-in" involved padlocking one of McDonnell Douglas' buildings to prevent the occupants from exiting.

same week in which Thurman committed the time clock violations for which she was fired, Edmonds, a Caucasian inside sales clerk, committed comparable time clock violations but that Edmonds was not fired at the same time. This evidence was sufficient to create an inference that Big O's asserted legitimate reason for terminating Thurman's employment was a pretext for discrimination.[5] Accordingly, we hold that the record contains sufficient evidence to support the ALJ's finding that Big O was motivated by race when it terminated Thurman's employment. We therefore reverse the court of appeals' holding to the contrary.[6]

### III.

In summary, we hold that in claims of employment discrimination, the complainant must initially establish a *prima facie* case of discrimination. If the complainant establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. Once the employer meets its burden, the complainant must then be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a pretext for discrimination. Where a *prima facie* case of discrimination is proven and the reasons given for discharge are found to be a pretext for discrimination, no additional evidence is required to infer intentional discrimination. The court of appeals therefore erroneously determined that the record did not support the ALJ's finding of discrimination by Big O. Accordingly, we reverse the court of appeals, reinstate the Commission's order finding discrimination against Thurman by Big O, and remand this case to the court of appeals with directions to consider the remaining undecided issues raised in Big O's notice of appeal.

---

**5.** Big O attempted to bolster its argument that it fired Thurman for legitimate and nondiscriminatory reasons by characterizing its failure to fire Edmonds as an innocent mistake. Specifically, Edmonds' supervisor testified that he did not notice Edmonds' handwritten additions to her time sheets when he approved those time sheets because Edmonds covered them up with her hand. The ALJ, however, discredited the supervisor's testimony, stating that, "[u]nder the circumstances, [the supervisor's] explanation that

he did not notice the errors when he initialed Ms. Edmonds' handwritten entry on May 16 is simply not believable."

**6.** We also granted certiorari on the issue of whether the court of appeals erred by substituting its conclusions for the findings and inferences drawn from such findings of the administrative law judge. Because we reverse the court of appeals for the reasons discussed above, we need not address this issue.