Ahmad BODAGHI, Complainant–
Appellee,

and

State Personnel Board, State
of Colorado, Appellee,

v.

DEPARTMENT OF NATURAL
RESOURCES, Respondent–
Appellant.

No. 95CA0577.

Colorado Court of Appeals,
Div. I.

March 5, 1998.

Rehearing Denied April 16, 1998.

Certiorari Granted Jan. 11, 1999.

James R. Gilsdorf, Denver, for Complainant–Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney Gen-

eral, Timothy M. Tymkovich, Solicitor General, Mary S. McClatchey, Assistant Attorney General, Denver; Roman, Benezra & Culver, L.L.C., Seth J. Benezra, Denver, for Appellee.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, David F. Steinhoff, Assistant Attorney General, Beth A. Wendel, Assistant Attorney General, Denver, for Respondent–Appellant.

Opinion by Judge CRISWELL.

In *Bodaghi v. Department of Natural Resources*, 943 P.2d 1 (Colo.App.1996), we reversed the order of the State Personnel Board (Board) that had held that the Department of Natural Resources (Department) had discriminated against Ahmad Bodaghi (Complainant), an employee of Iranian ethnicity of the Department, based upon his national origin. Thereafter, on petition for certiorari, the supreme court vacated our judgment and remanded the cause to us for our reconsideration in light of *Colorado Civil Rights Commission v. Big O Tires, Inc.*, 940 P.2d 397 (1997). On that reconsideration, we again reverse the Board's order.

### I.

Relying upon and adopting the burden-shifting model established by the Supreme Court in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny, particularly *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the supreme court in *Big O Tires, supra,* held that, if a plaintiff establishes a prima facie case under that model and if, in addition, there is a finding that the employer's asserted justification for the adverse employment action is a pretext for discrimination, sufficient evidence has been produced to sustain a finding of unlawful employment discrimination.

*Big O Tires, supra,* is the disposition on certiorari review of the opinion in *Thurman v. Big O Tires, Inc.*, Colo.App. No. 94CA1076, Dec. 21, 1995 (not selected for official publication), and in *Thurman*, no

*McDonnell–Douglas/Hicks* analysis was undertaken. Rather, there, reliance was placed solely upon older opinions issued by divisions of this court before that federal model was adopted. *See Adolph Coors Co. v. Colorado Civil Rights Commission*, 31 Colo.App. 417, 502 P.2d 1113 (1972); *Colorado Civil Rights Commission v. State ex rel. School District No. 1*, 30 Colo.App. 10, 488 P.2d 83 (1971). In *Big O Tires, supra,* the supreme court concluded that these previous decisions did not address the issue presented.

In contrast, the analysis undertaken in our previous opinion in this case was based upon the *McDonnell–Douglas/Hicks* model. However, it addressed an issue under that model that was not addressed, except by implication, by the supreme court in *Big O Tires*. To understand the nature of the reconsideration required here, therefore, a description of the issue we must address is necessary.

Because direct proof of illegal employment discrimination is seldom available, the Supreme Court in *McDonnell–Douglas* outlined the nature of indirect proof necessary to establish a prima facie case, as well as the relative burdens of proof and production that are to be placed on the competing parties. As *Big O Tires* emphasizes, a prima facie case of employment discrimination can be established by evidence that would tend to prove the following:

1—That the complainant belongs to a protected class;

2—That the complainant was qualified for the job in issue;

3—That the complainant suffered an adverse employment decision; and

4—That the circumstances give rise to an inference of discrimination.

In a failure-to-hire case, and presumably also in a failure-to-promote case, the fourth element can generally be established by proof that the complainant was denied the position and a non-class member was placed in it. *Big O Tires, Inc., supra.*

If complainant presents such a prima facie case, a presumption of discrimination arises, and the burden of producing evidence that the decision was undertaken in pursuit of a legitimate nondiscriminatory purpose

shifts to the employer. This burden, however, is merely one of production; this shifting device does not change the burden of proof.

What happens, then, if the employer meets its burden of production? This was the issue to which the Supreme Court addressed itself in *St. Mary's Honor Center v. Hicks, supra,* in which it laid down the following rules:

First, upon introduction of the employer's evidence of a nondiscriminating purpose, the presumption of discrimination created by the complainant's prima facie case, like all similar presumptions, *see* Fed.R.Evid. 301 and CRE 301, "simply drops out of the picture." *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 510–511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418.

However, at that point:

> [T]he complainant must then be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a *pretext for discrimination.*

*Colorado Civil Rights Commission v. Big O Tires, Inc., supra,* 940 P.2d at 401 (emphasis supplied).

■ In this respect, there is no *requirement* that the complainant produce further evidence, and if the factfinder determines that the reason given by the employer was not its true reason and that the given reason was simply a pretext for discrimination, a finding of discrimination will be sustained. *Big O Tires, supra.*

At the same time, however, the *Hicks* court made clear that a finding that the employer's explanation is not *believable,* without more, may *not* be sufficient to sustain a finding of discrimination. It said:

> We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate fact-finder determines, according to proper procedures, that the *employer has unlawfully discriminated.* We may, according to traditional practice, establish certain modes and orders of proof, including an initial rebuttable presumption of the sort we described earlier in this opinion, which we believe McDonnell Douglas represents. But nothing in law would permit us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable.

. . . .

> But a reason cannot be proved to be a 'pretext for *discrimination*' unless it is shown *both* that the reason was false, and that discrimination was the real reason.

*St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 514–515, 113 S.Ct. at 2751–2752, 125 L.Ed.2d at 421–422 (all original emphasis).

■ Based upon this admonition, the federal courts, speaking in a nearly unanimous voice, have determined that, for the factfinder to infer that the employer's reason for its decision was a pretext for discrimination, there must be competent evidence upon which such an inference may be based; simply determining that the employer's explanation is unbelievable is insufficient. *See Udo v. Tomes,* 54 F.3d 9 (1st Cir.1995) (even assuming that employer's reason was a pretext for a purpose other than discrimination, summary judgment for employer proper); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989 (5th Cir.1996) (once employer presents evidence and presumption disappears, sufficiency of evidence is to be tested by ordinary standards); *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078 (6th Cir.1994) (employee's prima facie case insufficient to support inference that employer's reason was pretext for discrimination); *Wallis v. J.R. Simplot Co.,* 26 F.3d 885 (9th Cir.1994) (insufficient evidence to establish employer's reason was pretext for discrimination); *Randle v. City of Aurora,* 69 F.3d 441, 453 (10th Cir.1995) ("At trial, the plaintiff must prove illegal discrimination either (1) *inferentially* by showing that the proffered reason is a pretext for discrimination; and/or (2) *directly* by offering direct evidence of discrimination." (original emphasis)).

As we understand the rationale expressed in these decisions, a complainant is under no obligation to present evidence beyond that

necessary to establish a prima facie case. However, if an employer produces evidence of a justifiable reason for its action, in order for the factfinder to determine that the employer's action was unlawful, there must be evidence, not just that the employer's reason was false, but also that it was a pretext for discrimination.

In many, indeed perhaps in most, instances, the nature of the evidence presented by the complainant to establish a prima facie case will also be sufficient to allow the inference that the pretextual nature of the reason given by the employer evidences an intent to hide a discriminatory motive. As is the case with all findings of fact, however, a finding that the reason advanced by the employer is a "pretext for discrimination" must be supported by legally sufficient evidence; it may not be based upon speculation. *See Udo v. Tomes, supra,* 54 F.3d at 13 ("While the plaintiff may rely on the same evidence to prove both pretext and discrimination, the evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus.")

Hence, the federal courts have held that, if the circumstances of the case are such that the evidence produced to establish a prima facie case is not sufficient also to support a finding that the employer's reason was a pretext for discrimination, then, if the complainant is to prevail, there must be other evidence produced that would support such a finding. *See Wallis v. J.R. Simplot, supra.*

As we have noted, in *Big O Tires,* the supreme court did not directly address this issue. Nevertheless, there are several reasons for concluding that that court contemplated that the state courts were to use the same rationale with respect to this issue as is applied by the federal courts.

First, the court concluded that the analysis of *McDonnell–Douglas* and its progeny "represents a clear and thorough analytical framework for evaluating claims of employment discrimination." Hence, it adopted that analytical model, but modified the language expressing the requirement for a prima facie case so as to "accommodate various kinds of employment decisions and various forms of discrimination." *Colorado Civil Rights Commission v. Big O Tires, Inc., supra,* 940 P.2d at 400. Save for this linguistic modification, which has no impact upon the issue addressed here, there is no indication that the court intended to apply the *McDonnell–Douglas/Hicks* analytical model any differently than have the federal courts.

The supreme court adopted the rule created by *McDonnell–Douglas/Hicks* that "a factfinder may infer intentional discrimination based only on findings that a prima facie case of discrimination was established *and* that the reasons given for discharge were a *pretext for discrimination." Colorado Civil Rights Commission v. Big O Tires, Inc., supra,* 940 P.2d at 400 (emphasis supplied). While it cited language in *St. Mary's Honor Center v. Hicks, supra,* 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418, that "rejection of defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination . . .," nothing within *Big O Tires* suggests that the court was rejecting *Hicks'* explicit admonition that mere disbelief of the employer's proffered reasons may not be sufficient to establish a proper basis for a finding that those reasons were a pretext for *discrimination.*

Finally, after aligning Colorado with the federal courts' model, the supreme court in *Big O Tires* then proceeded to determine whether the evidence in that case was sufficient to support a finding that "Big O's asserted legitimate reason was a *pretext for discrimination." Colorado Civil Rights Commission v. Big O Tires, supra,* 940 P.2d at 402. (emphasis supplied) It held that evidence that a white employee with a similar work record as complainant, who had engaged in the same work transgressions as the complainant, was not disciplined, while complainant was discharged, was sufficient to allow the factfinder to determine that the reasons given by the employer were pretextual and that the pretext was to disguise discrimination based on race.

The analysis engaged in by the supreme court is consistent with that employed by the federal courts in applying the *Hicks* admoni-

tion. Indeed, but for this admonition, the court in *Big O Tires* need not have examined the record to determine the sufficiency of the evidence to demonstrate a pretext for discrimination. We conclude, therefore, that the supreme court intended that admonition to be heeded in any Colorado case in which a claim of unlawful discrimination is made.

## II.

■ In accordance with our mandate, we have again engaged in a detailed review of the record in this case. We reach the same conclusion expressed in our former opinion— that this record does not contain evidence that would support the inference that the reason given by the Department for its actions here was a pretext for discrimination.

The historical facts presented to the Administrative Law Judge (ALJ) and relied upon by the Board are not in substantial dispute.

In the summer of 1990, the State Board of Land Commissioners (the land board) engaged, for the first time, a staff director who was given administrative responsibility over all of the land board's functions. He became the appointing authority for all employees under the land board.

Shortly thereafter, several vacancies in senior staff positions became open. It is undisputed that, in filling those vacancies, the staff director could have used either of two methods—he could have transferred an individual performing similar functions in another division into the position (a "lateral transfer") or he could have asked the Board to certify a list of three qualified applicants from which he could make his selection. *See generally* Colo. Const. art. XII, § 13(5).

In filling the senior staff vacancies occurring shortly after the staff director assumed his position with the land board, he used both techniques. In some instances, he exercised his right to engage in lateral transfers; in other instances, he requested a list of qualified applicants from the Board.

In those instances in which the staff director filled these positions from a list supplied by the Board, he convened a three-member panel, comprised of a member of the land board and two other senior staff members, to interview the applicants and to make a recommendation for appointment. The successful applicant in each case was selected by the staff director, based upon the panel's recommendation. The evidence does not establish the ethnicity or the racial background of any of the applicants who were involved in this process.

Some time after these vacancies were filled, there were three instances in which positions were "re-allocated," *i.e.,* the responsibilities of the position were determined to be worthy of a higher classification. Upon such a re-allocation, the staff director, likewise, could have filled the re-allocated position either by lateral transfer or by obtaining a qualified list from the Board. To be appointed to the re-allocated position, the person presently filling that position (the incumbent) must be determined by the Board to be qualified for that re-allocated position.

One of these re-allocated positions involved a senior staff position in which one of the persons appointed by the staff director shortly after his appointment was serving. The other two positions were secretarial positions. In all three instances, the staff director appointed the incumbent without convening a panel for a recommendation.

Again, the evidence does not establish the ethnicity or the racial background of any of the applicants for these re-allocated positions.

In early 1993, when the staff director had been with the land board for about two and one-half years, two other senior staff positions were re-allocated. One of those positions had previously been filled by the staff director's use of a panel. The other position, a major responsibility of which was recommending the sale of rights-of-way over state land, was occupied by Complainant.

Complainant had been with the land board for some eight years. He had been appointed to the original position by lateral transfer from the Department of Highways. After his appointment, he had been delegated increasing responsibilities to the end that his original position had been re-allocated twice;

each time he had been appointed to the re-allocated position.

It is undisputed that Complainant performed the duties of his position satisfactorily. Indeed, some time after the staff director was appointed, he selected Complainant for commendation as an outstanding employee.

However, when Complainant's position and the other senior staff position were re-allocated, the staff director, apparently for the first time, gave written notice to other members of the department of the pending openings. This was in addition to the notice that the Board itself gives in every case and in addition to the e-mail notice that the staff director had given in such cases in the past. The staff director also informed Complainant and the staff member who was occupying the other re-allocated position that he intended to fill both two positions by use of the panel process that he had used in the past.

The record does not contain a description of the ethnicity or the nationality of the incumbent in the other re-allocated position. We will assume, however, that that incumbent was a white man of non-Iranian descent.

When that incumbent and Complainant learned of this announcement and of the staff director's plans to use the panel process, both complained to him. Nevertheless, when the Board certified three persons as qualified for the re-allocated position held by Complainant and two persons for the other re-allocated position, the staff director continued with his plans to convene a three-member panel to interview and to test the applicants for each of the two positions.

Shortly before the panel convened to interview applicants for the other position, however, one of those applicants withdrew, leaving only a single applicant, the incumbent, for that position. Hence, because there was only a single applicant, the convening of a panel for that appointment was unnecessary.

During his testimony before the ALJ, Complainant stated his the opinion that the withdrawal of the second applicant was "suspicious." However, there was no evidence, and the ALJ did not find, that this applicant's withdrawal was requested or otherwise influenced by the director. Nor is there any evidence from which it could be inferred that a panel would not have been convened to interview and to test the two applicants for this position had the second applicant not withdrawn.

A panel, consisting of a member of the land board, two senior staff members, and the staff director, convened to consider the three applicants for the re-allocated position then being filled by Complainant. Each applicant was asked to prepare a written response to two general questions before meeting with the panel; they were then given a written examination consisting of 24 questions of a technical nature; and each had an oral interview with the panel.

Thereafter, the three members of the panel, other than the staff director, provided an analysis of the three applicants and ranked them in order. These comments revealed that, while Complainant and one of the other applicants were considered of equal ability with the third applicant in some areas, in other areas (including creativity and ability of expression) the third applicant exceeded both. Overall, each of the panel members rated Complainant second to the eventual successful applicant.

This applicant was both a certified surveyor and a member of the Appraisal Institute. While the re-allocated position did not require such qualifications, it did require that the position holder have a "knowledge of principles of land economics, influencing land value," as well as knowledge of land titles, leases, and legal documents as such materials might affect land values. Further, both the member of the land board who served on this panel, as well as the supervisor in charge of the right of way program that the re-allocated position was to administer, testified that, given this applicant's background and the increasing need for expert appraisal work, his qualifications would allow the future assignment of additional appraisal duties to the position and that such an option would not be provided by the appointment of either of the other applicants.

This applicant, rather than the Complainant, was appointed to the re-allocated posi-

tion. Sometime after his appointment, additional appraisal responsibilities were, in fact, assigned to this position.

Several present and former employees of the land board, as well as several persons who had unsuccessfully applied for positions under the staff director, testified before the ALJ. Although the competency of such evidence is questionable, the ALJ allowed several to express opinions as to the staff director's motivation in making appointments. None of these witnesses opined that Complainant's ethnicity was a motivating factor in the director's failure to appoint him. While several expressed the view that some of the staff director's actions were unfair, they attributed his motivation to a desire to bring "fresh blood" to the land board and to appoint persons with whom he had previously worked. Even Complainant, when first asked to express his opinion upon the subject, asserted only that "maybe" the staff director did not appoint him because of his ethnic background.

The staff director acknowledged that some of his appointments by lateral transfer were designed to bring to the land board persons whom he knew from past experience had good managerial skills. In addition, he testified that, whenever he had used the panel process to aid his selection, he had done so to assure that the most qualified applicant was chosen and that this was his motivation for using the process in the case of Complainant's re-allocated position.

Based upon the foregoing evidence, the parties before us have mutually conceded that Complainant presented a prima facie case and that the Department met its burden of production under the *McDonnell–Douglas/Hicks* model.

The ALJ found that the staff director's statement of motivation was pretextual. In reaching this determination, however, the ALJ did not find that the panel process itself was racially or ethnically skewed in some manner—he did not find that either the pre-interview written assignment, the written examination, or the oral interview was tainted. Likewise, he did not find that the recommendations of the three other panel members to appoint the successful applicant were based

upon race, nationality, or ethnic background. Indeed, the ALJ did not question the assertion that the panel interview and testing process resulted in the appointment of the most qualified applicant.

The ALJ's finding was that, even though the selection process, once the staff director decided to use that process, was fair and not discriminatorily tainted, the staff director's decision to use that process was not motivated by a desire to obtain the most qualified candidate for the job, but that stated motive was a pretext to deprive complainant of the re-allocated position because of his Iranian background. Hence, the ALJ found that the staff director's explanation for this decision was false and pretextual. And, the principal basis for this finding of pretext was the fact that the staff director had not used the panel process in the three earlier instances of re-allocated positions described above.

■ However, if the process used by the staff director resulted in the selection of the most qualified applicant, the fact that he failed to follow his own past internal procedures cannot result in a finding of discrimination. *See Randle v. City of Aurora, supra,* 69 F.3d at 454 ("The City apparently promoted [the other employee] because she was the most qualified candidate for the position and [plaintiff] has offered no evidence suggesting that this reason was pretextual, *i.e.,* that she was more qualified for the position. Thus, [plaintiff] has failed to show how the City discriminated against her by allegedly failing to follow its own past procedures.") *See also Woods v. Friction Materials, Inc.,* 30 F.3d 255 (1st Cir.1994) (if employer asserts that employee selected was better qualified, plaintiff must show that this assertion is not true in order to establish a pretext for discrimination); *Durham v. Xerox Corp.,* 18 F.3d 836 (10th Cir., 1994) (absent proof that employer's assertion that applicant chosen was more qualified was false, evidence of pretext insufficient).

Here, the evidence is undisputed that the successful applicant, a certified surveyor and an Appraisal Institute member, was more qualified to administer a right-of-way program than was Complainant. In addition, no

one disputes the assertion that this applicant's appraisal expertise allowed the re-allocated position to be assigned greater appraisal responsibilities as, indeed, occurred shortly after his appointment. While the position's job description did not require these qualifications, that they have a direct relevance to the responsibilities of the position is unquestionable.

Given all of the circumstances, we again conclude that this record is insufficient to sustain a finding that the complainant was discriminated against because of his ethnic background. In light of the successful applicant's unquestioned qualifications, the ALJ's findings that the staff director's explanation for use of the panel was unbelievable cannot support the ultimate finding of discrimination.

The order of the Board, therefore, is reversed, and the cause is remanded to it with directions to dismiss the Complainant's appeal of the staff director's action in failing to appoint him to the re-allocated position.

METZGER and TURSI *, JJ., concur.