24CA1160 Madruga v DOR 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1160
State Personnel Board No. 2023S048

---

Joao (John) Madruga,

Complainant-Appellant,

v.

Department of Revenue,

Respondent-Appellee,

and

State Personnel Board,

Appellee.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Schwane Law, LLC, Mark A. Schwane, Denver, Colorado, for Complainant-Appellant

Philip J. Weiser, Attorney General, Eric W. Freund, Senior Assistant Attorney General, Amanda C. Swartz, Assistant Attorney General, Stephen J. Woolsey, Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

No Appearance for Appellee

¶ 1    Complainant, Joao (John) Madruga, appeals an order of the Colorado State Personnel Board (the Board) affirming the initial decision of an administrative law judge (ALJ). The ALJ found that Madruga failed to prove that the respondent, Colorado Department of Revenue (the Department), discriminated against him based on his national origin when it did not select him for a promotion. Because the record supports the Board's decision, we affirm.

## I.    Background

¶ 2    Madruga was born in Portugal. He immigrated to the United States with his family as a child and became a naturalized citizen when he was fourteen years old. He served in the United States Army and has two master's degrees — one in business administration and one in accounting and financial management.

¶ 3    Madruga has worked for the Department's Division of Gaming (the Division) since 2005. He was hired as a Senior Investigator, promoted to Supervisory Investigator in 2010, and promoted to Agent in Charge (AIC) in 2017. As one of four AICs in the Division, Madruga supervises the Division's licensing and background investigations sections. Throughout his tenure at the Division, Madruga has met or exceeded expectations in his annual

performance evaluations. His three most recent annual evaluations rated him as exceptional, satisfactory plus, and exceptional.

### A. Application and Hiring Process

¶ 4 In October 2022, the Department posted a job announcement for the position of Deputy Director/Chief of Investigations — Sports Betting within the Division (the position). The minimum qualifications for the position included four years of "professional regulatory investigative experience," two of which demonstrated leadership or supervisory duties. The job posting also identified several "preferred qualifications and competencies." Madruga applied for the position, which would have been a promotion.

¶ 5 A human resources analyst determined that seventeen candidates, including Madruga, met the minimum qualifications for the position. Three Division subject matter experts — the Director of the Division, Dan Hartman; the Deputy Director, who was retiring from the position; and the Division's Chief Auditor — then performed a "comparative analysis" of the minimally qualified applicants and selected six for interviews. Two more candidates were referred for interviews based on their veterans' preference. Colo. Const. art. XII, § 15(1)(a)(II) ("If a nonnumerical method is

2

used [for the comparative analysis], applicants entitled to [a veterans' preference] shall be added to the interview eligible list."). Madruga was notified that he was not selected for an interview.

¶ 6    All candidates who advanced to the interview phase went through a "meet and greet" and then a panel interview. The meet and greet panel included two Division sports betting employees. The interview panel included a director of another section, a former director of another division, an industry representative, and an assistant attorney general. The interview panel identified the top four candidates, and Hartman — the position's supervisor and the decisionmaker — conducted a "final interview" of all four.

¶ 7    After final interviews for the position had been completed but before a hiring decision had been made, the Department notified Madruga that he was eligible to receive an interview based on veterans' preference after all. The Department attributed this shift to a discrepancy in the interpretation of dates on the form attached to his application. The Department human resources analyst later testified at the hearing that, in fact, Madruga was not eligible for a veteran's preference because the position would be a promotion. *See* Colo. Const. art. XII, § 15(5). But he was given an interview

because another applicant for whom the position would also be a promotion had mistakenly been granted a veterans' preference.[1]

¶ 8    Madruga moved on to the meet and greet and interview panel that the other applicants had already completed.  One member of the meet and greet panel negatively viewed a couple of Madruga's comments — including that "the higher one goes in the Division, the less one knows" — and shared her concerns with Hartman.  The interview panel rated Madruga among the top five candidates but noted that he had less experience in sports betting than one candidate and less familiarity with national stakeholders than two others.  Madruga then completed a final interview with Hartman.

¶ 9    Shortly after Madruga's final interview, Hartman offered the position to Jason Van't Hof, who had experience in military investigations, investigations for the National Football League (NFL), sports betting, and managing and serving as a "broad-based liaison with stakeholders."  Van't Hof declined the offer.  Hartman then offered the position to Kevin Farrington, who had served as an FBI

---

[1] After Madruga was initially notified that he was not selected for an interview, he appealed that decision to the Board, alleging that it constituted national original discrimination.  Madruga dismissed that appeal after he was notified he would be given an interview.

agent for twenty-five years and had extensive experience in sports betting and conducting investigations. Farrington also declined.

¶ 10     The next day, the Board cancelled the recruitment for the position. Three days later, it reopened the position and extended the application deadline, saying in the posting that anyone who had already applied did not need to reapply. Madruga reapplied anyway. Around that time, Hartman announced his plan to retire, and the Department again cancelled the posting until Hartman's replacement could be hired. The position was never filled.

## B.     Madruga's Board Appeal

¶ 11     Madruga filed an appeal with the Board, alleging that the Department had discriminated against him based on his national origin in violation of the Colorado Anti-Discrimination Act (CADA).

¶ 12     After a three-day evidentiary hearing, the ALJ issued an initial decision finding that Madruga had failed to prove his discrimination claim. Applying the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), and *Colorado Civil Rights Commission v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997), the ALJ found that Madruga had established a prima facie case of national origin discrimination because (1) he

was of Portuguese descent; (2) he met the minimum qualifications for the position; (3) he was not selected; and (4) there were irregularities in the process that permitted an inference of unlawful discrimination. The ALJ identified four such irregularities:

(1) given Madruga's knowledge and experience in the Division, it "defies reasonable expectations" that he was not among the top six applicants;

(2) the applicants were ranked subjectively and there was a "dearth of documentation concerning the ranking";

(3) the Department mishandled Madruga's veterans' preference in the selection process; and

(4) after Van't Hof and Farrington declined their offers, the Department cancelled the position, reposted it, and then cancelled it again, ultimately leaving the position unfilled.

¶ 13 The ALJ then found that the Department had articulated legitimate, nondiscriminatory reasons for these irregularities and for its decision not to select Madruga for the position. In particular, the ALJ found that (1) the Department provided a legitimate explanation for its handling of Madruga's veterans' preference; (2) Department representatives who participated in the selection

6

process testified credibly that Van't Hof and Farrington were their preferred candidates based on their experience and performance during the interview process; and (3) Hartman cancelled and reposted the position because he believed the other candidates were "a tier below" the candidates who had declined the offers.

¶ 14 Finally, the ALJ found that Madruga failed to prove that the Department's reasons for its decision were pretextual. The ALJ found that Madruga was "not clearly the most qualified and best fit for the [p]osition." The ALJ also found that, although Hartman "did not appear to like [Madruga] very much," there was no evidence this attitude was based on Madruga's national origin. As to the Department's handling of Madruga's veterans' preference, the ALJ found that the evidence "left no doubt that such mishandling was not devised to sabotage [Madruga's] application," as indicated by the fact that Madruga ultimately received a veterans' preference.

¶ 15 Madruga appealed the ALJ's initial decision to the Board, which affirmed the decision.

## II. Analysis

¶ 16 Madruga contends that the ALJ and Board erred by finding that he failed to prove discrimination. He asserts that (1) he was

more qualified than the two candidates to whom offers were made, and (2) the ALJ failed to consider his prima facie evidence in finding that the Department's proffered reasons for its decision were not pretextual. Because substantial evidence in the record supports the ALJ's decision, as affirmed by the Board, we affirm the decision.

### A. Standard of Review and Applicable Law

¶ 17 We may reverse the Board's decision if it is arbitrary or capricious, unsupported by the record, contrary to law, or in excess of the Board's jurisdiction. § 24-4-106(7)(b), C.R.S. 2024; *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001). Conversely, we must uphold the decision "if a consideration of the record as a whole reveals that the decision is supported by substantial evidence." *Dep't of Hum. Servs. v. State Pers. Bd.*, 2016 COA 37, ¶ 13. In conducting this review, we must accept the ALJ's factual findings unless they have no support in the record. *Id.* at ¶ 14.

¶ 18 CADA forbids an employer from, as relevant here, refusing to hire or promote a qualified individual because of their national origin. § 24-34-402(1)(a)(I), C.R.S. 2024. A claimant may establish a prima facie case of discrimination by showing (1) membership in a protected class; (2) qualification for the job at issue; (3) an adverse

8

employment decision; and (4) circumstances giving rise to an inference of unlawful discrimination. *Big O Tires*, 940 P.2d at 400.

¶ 19 The burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the employment decision." *Id.* at 401. If the employer meets this burden, the claimant must be given "a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for the employment decision were in fact a pretext for discrimination." *Id.*

¶ 20 But once the employer offers a nondiscriminatory reason for the employment action, "the presumption of discrimination 'drops out of the picture'" and "the trier of fact must decide the ultimate question of whether the employer intentionally discriminated against the [claimant]." *St. Croix v. Univ. of Colo. Health Scis. Ctr.*, 166 P.3d 230, 236 (Colo. App. 2007) (citation omitted). And on post-hearing review, the burden-shifting framework "drops out of the analysis" altogether, and we need only consider whether the record supports the factfinder's resolution of that ultimate question. *Bodaghi v. Dep't of Nat. Res.*, 995 P.2d 288, 301 (Colo. 2000).

## B. Substantial Evidence

¶ 21 The record contains substantial evidence to support the ALJ's and Board's determination that the Department did not refuse to select Madruga for the position based on his national origin but rather because it determined other candidates were more qualified.

### 1. Qualifications for Position

¶ 22 Multiple Department witnesses testified that Madruga was not selected because he was less qualified than the two candidates who were offered the position, particularly with respect to the sports betting industry and his familiarity with national stakeholders. One member of the interview panel testified that Madruga "didn't have as . . . full knowledge of the issues that were pending for the sports betting industry" and "was not as familiar with all the [s]takeholders for the sports betting industry on a [n]ational front as a result." Hartman, the Division Director, testified that he was concerned by Madruga's extensive focus on gaming during his interview because the sports betting industry is unique. Other witnesses similarly described their concerns about Madruga, including the "depth and breadth" of his experience, his attitude toward leadership, and his "shortsighted view of the position."

10

¶ 23    In contrast, several of these same witnesses testified as to why they believed the two successful candidates were more qualified than Madruga.  For example, Hartman emphasized Van't Hof's experience as a liaison in the military and the NFL, and his experience in developing the integrity program for sports betting in the NFL.  Another interviewer similarly cited Van't Hof's experience working with different stakeholders.  That witness also highlighted Farrington's leadership within the FBI, experience with sports betting, and knowledge of the issues in the industry.  Other witnesses testified more generally about the other candidates' demeanor and their ability to represent the sports betting team.

¶ 24    The ALJ found the Department's witnesses credible as to their assessment of the candidates' qualifications and fit for the position.  *See Bodaghi*, 995 P.2d at 303 ("The credibility of witnesses and the weight to be accorded their testimony lies within the province of the agency as trier of the facts.").  Because that finding has substantial support in the record, we may not reweigh the evidence and "substitute [our] judgment for that of the factfinder."  *See id.*

¶ 25    Madruga insists that the ALJ erred because the two successful candidates did not possess the minimum qualification of four years

of regulatory investigative experience. But this too turns on credibility determinations. The Department's human resources director testified that the Department interpreted this requirement broadly to expand the pool of candidates and that it included any experience that "measure[s] [an] occurrence against a set standard," including criminal investigative experience. And the human resources analyst testified that Van't Hof's experience as an intelligence analyst with the NFL and military and Farrington's years of experience with the FBI satisfied this requirement.

¶ 26     By asking us to conclude otherwise, Madruga asks us to reject this testimony that the ALJ found credible, which we cannot do. *See St. Croix*, 166 P.3d at 240 ("The issue is not whether the reasons for [the employment decision] were 'wise, fair, or correct,' but whether the employer believed those reasons to be true and whether the employer acted upon those reasons in good faith.") (citation omitted).

¶ 27     Madruga also maintains that he had more of the *preferred* qualifications listed in the job posting than the two successful candidates. The Department addressed this point as well, with one interview panelist acknowledging, for example, that only the

internal candidates had knowledge of the pertinent Colorado rules and regulations. But that witness explained that a candidate with knowledge of other rules and regulations could learn the Colorado rules very quickly. To prove that an employer's claim that the hired candidate had superior qualifications is a pretext for discrimination, the claimant must "come forward with facts showing an 'overwhelming' 'disparity in qualifications.'" *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation omitted). The ALJ found, with record support, that Madruga did not do so.

## 2. Prima Facie Evidence

¶ 28 Madruga also contends that the ALJ erred by ignoring the evidence that it found satisfied his prima facie case when deciding the ultimate question of intentional discrimination. *See Bodaghi*, 995 P.2d at 303 (holding that no additional evidence is required to support a finding of discrimination when the employee proved a prima facie case and the employer's reasons are pretextual). But the ALJ did consider the factors that supported Madruga's prima facie case and found that they did not prove discrimination.

¶ 29 The ALJ directly addressed the Department's shifting positions regarding Madruga's veterans' preference and found the witnesses

provided a credible, legitimate explanation. Specifically, Madruga was not eligible for a veterans' preference, but when the Department realized it had mistakenly given a veterans' preference to another applicant in the same situation, it did the same for Madruga. And although the Department did not tell Madruga the real reason for its change in position, the ALJ found that this "anomal[y] [was] not probative of a discriminatory animus."

¶ 30 The ALJ also addressed the apparent irregularities in the "on-again off-again nature" of the job posting, again finding a legitimate justification for it. As Hartman testified, and the ALJ credited, the job was cancelled and reposted the first time because Hartman thought the remaining candidates were in a "band" below the candidates who had declined offers. The job posting was pulled the second time because Hartman had announced his plan to retire and the new Senior Director of the Specialized Business Group opted to defer filling the position until Hartman's replacement could be hired. The ALJ found, with record support, that these circumstances dispelled any inference of unlawful discrimination.

¶ 31 The other two reasons for the ALJ's finding that Madruga had satisfied his prima facie case — his knowledge and experience in

14

the Division and the subjective nature of the ranking system — were encompassed by the ALJ's findings regarding the applicants' respective qualifications. Even if Madruga was qualified, the ALJ found that the other applicants were "arguably superior." And thus, the subjective assessments were not used to justify the rejection of a candidate that was "objectively better qualified" than those who were selected. *Bodaghi*, 995 P.2d at 300. Indeed, other internal candidates — who also had pure regulatory experience and familiarity with Colorado regulations — were also not selected. *Cf. St. Croix*, 166 P.3d at 237 (holding that different treatment of similarly situated employees may be evidence of pretext).

¶ 32    Madruga also asserts that the ALJ failed to mention that, nine months before the position posting, Madruga had complained to the human resources director that he was the lowest paid AIC in the Division and that he believed Hartman was discriminating against him based on his national origin. But the ALJ *did* mention that prior complaint, noting that Hartman was not responsible for setting AIC salaries and that Madruga did not file an appeal related to that complaint. In any event, Madruga does not explain how this prior complaint undermines — much less forecloses — the ALJ's

finding that the Department had legitimate nondiscriminatory reasons for not hiring Madruga for the position nine months later.

¶ 33    Relying on *Bodaghi,* Madruga argues that the evidence satisfying his prima facie case was alone sufficient to permit an inference of intentional discrimination.  995 P.3d at 292.  But just because the evidence might have *permitted* such an inference does not mean it *compelled* one.  In *Bodaghi,* the ALJ found that the employer had engaged in unlawful discrimination, and the court of appeals erred by substituting its own findings and conclusions for those of the ALJ.  *Id.* at 291-92.  In this case, the ALJ found there was *no* discrimination.  We will not make the same error.

### III.    Attorney Fees

¶ 34    In a single sentence without citation, Madruga requests an award of attorney fees and costs "pursuant to statute for the Board case and this appeal."  Because Madruga does not "explain the legal and factual basis" for his request, we deny it.  C.A.R. 39.1; *see also Andres Trucking Co. v. United Fire & Cas. Co.,* 2018 COA 144, ¶ 63 (declining to consider request for attorney fees where requesting party did not provide any factual recitation or legal authority).

## IV. Disposition

¶ 35    The order is affirmed.

JUDGE DUNN and JUDGE BROWN concur.